**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION**

| | |
|---|---|
| RASHAD DEBOSE,<br><br>Plaintiff,<br><br>vs.<br><br>DUN & BRADSTREET HOLDINGS, INC.,<br><br>Defendant. | Civil Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1. Plaintiff Rashad DeBose resides at 4956 Coconut Dr, Canal Winchester, Ohio, 43110. Defendant Dun & Bradstreet Holdings, Inc. has its principal place of business at 101 JFK Parkway, Short Hills, New Jersey, 07078.

## I. NATURE OF ACTION

2. Plaintiff Rashad DeBose ("Plaintiff") and members of the proposed class (the "Class" or "Class Members") seek damages, an injunction, and additional relief from Defendant Dun & Bradstreet Holdings, Inc. ("Dun & Bradstreet"). Dun & Bradstreet used Plaintiff's and Class Members' names and personas to promote paid subscriptions to the "D&B Hoovers" website without consent in violation of Ohio's right of publicity statute, Ohio Rev. Code § 2741, and Ohio common law prohibiting misappropriation of a name or likeness.

3. Plaintiff and Class Members are private individuals who have no relationship with the Defendant Dun & Bradstreet or the website it owns and operates at www.app.dnbhoovers.com (the "D&B Hoovers" website). Plaintiff and the Class have never used the D&B Hoovers website, nor did they provide their names, contact information, professional histories, personas, or any other personal information to Dun & Bradstreet.

4. Plaintiff was seriously distressed to discover that Dun & Bradstreet is using his name and personal information to advertise subscriptions to the D&B Hoovers website.

5. Plaintiff and the Class did not consent to Dun & Bradstreet using their names, contact information, job titles, work histories, identities of their colleagues, and other personal information to promote D&B Hoovers subscriptions. Nor did they consent to Dun & Bradstreet selling access to their names, contact information, job titles, work histories, identities of their colleagues, and other personal information as part of its D&B Hoovers subscription product.

6. The D&B Hoovers database contains the names, personal information, and personas of hundreds of millions of individuals, including tens of millions of Ohioans.

7. A subscription to the D&B Hoovers database costs in excess of $10,000 per year. Dun and Bradstreet sells the D&B Hoovers database to salespeople and marketers. D&B Hoovers subscribers use the personal information in the D&B Hoovers database to send personalized sales and marketing communications to the individuals who appear in the D&B Hoovers database, including Plaintiff and the Class.

8. Dun and Bradstreet advertises and promotes the D&B Hoovers database by publicly displaying profiles of the Plaintiff and Class Members showing aspects of their personas including their names, contact information, job titles, place of work, and the identities of their work colleagues.

9. Users who sign up for a free trial of the D&B Hoovers database may view, and have viewed, the profiles containing the names and personas of Plaintiff and the Class.

10. During the free trial, users who attempt to download Plaintiffs' and Class Members' personal information are told they must purchase a subscription to receive a download.

11. After the free trial expires, users must purchase a subscription to continue viewing and using Plaintiffs' and Class Members' personal information.

12. Dun & Bradstreet does not present Plaintiff's and Class members' profiles simply as samples advertising access to a single profile. Rather, Dun & Bradstreet uses Plaintiff's and Class Members' names and personal information to advertise paid subscriptions to the D&B Hoovers database, which provides access to profiles of hundreds of millions of individuals, information about millions of companies, and many additional services.

13. Dun & Bradstreet is the sole author, designer, and implementor of the advertisements and searchable database giving rise to this lawsuit. Dun & Bradstreet does not host user-generated content. Dun & Bradstreet is the sole curator, designer, and creator of the content described in this Complaint, including the profiles of Plaintiff and Class Members it uses to advertise subscriptions, and the on-site messages it uses to convert free trial users to paying subscribers.

14. Plaintiff's and Class Members' names, personal information, photographs, likenesses, and personas have commercial value. This commercial value is demonstrated by the exploitation of their names, personal information, photographs, likenesses, and personas for commercial gain by Dun & Bradstreet and Dun & Bradstreet's competitors.

15. In public statements to its investors, Dun & Bradstreet has touted the commercial value of Plaintiff's and Class Members' personal information, which it claims to own. In a section of its 2020 annual report entitled "Our Competitive Strengths," Dun & Bradstreet states

that one of its competitive strengths is "[o]ur owned, proprietary data sets [which] include . . . personal contact data."[1]

16. Plaintiff does not know how Dun & Bradstreet obtained his name, contact information, place of work, names and contact information of his colleagues, and additional personal information.

17. Dun & Bradstreet misappropriated Plaintiff's and Class Members' names, contact information, job titles, places of work, and other personal information without consent from Plaintiff or the Class.

18. Consent is not all or nothing. Plaintiff and the Class may have shared their names, contact information, job descriptions and job titles with companies or individuals in a variety of contexts. For example, Plaintiff or Class members may have consented to the posting of their names on the website of the company for which they work, or on a professional networking site.

19. Plaintiff and the Class did not consent to the commercial use of their names and personal information to promote subscriptions to a website with which they have no relationship, and which exists to enable salespeople and marketers to target Plaintiff and the Class with unwanted solicitations.

20. Plaintiff and the Class did not consent to Dun & Bradstreet selling access to their names and personal information as part of its D&B Hoovers database.

21. Ohio law recognizes the intellectual property and privacy rights of Ohio citizens in controlling the use of their names and personas for commercial purposes.

---

[1] Dun & Bradstreet Holdings, Inc., 2020 Annual Report, at pg. 8, available at https://s25.q4cdn.com/994808080/files/doc_financials/2020/ar/DunBradstreet_2020_AR_Final.pdf

22. By using Plaintiff's and Class Members' names and personas in advertisements for website subscriptions without consent, Dun & Bradstreet has violated their intellectual property and privacy rights. Plaintiff and the Class have the right not to have their personas exploited to promote a product with which they have no relationship and no interest in supporting. Plaintiff and the Class have an economic interest in their personas, which Dun & Bradstreet has stolen, and a privacy interest in their personas, which Dun & Bradstreet has violated.

23. By these actions, Dun & Bradstreet has violated the Ohio Right of Publicity, codified in Ohio Rev. Code § 2741, and Ohio common law prohibiting misappropriation of a name or likeness. Plaintiff and the Class have suffered injury through the unlawful taking of their valuable intellectual property; through the invasion of their privacy rights protected by statute and common law; through Dun & Bradstreet's unlawful profiting from its exploitation of their names, personas, and personal information; and through harm to peace of mind. Plaintiff and the Class are entitled to relief including statutory damages, disgorgement of profits, royalties for the use of their personas, restitution of the value of their personas, an injunction prohibiting Dun & Bradstreet's unlawful conduct, the award of attorneys' fees, expenses, and costs, and declaratory relief.

## II. JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) members of the putative class are citizens of a state different from at least one defendant. Defendant Dun & Bradstreet Holdings, Inc. is incorporated in Delaware and has its principal place of business in Short Hills, New Jersey. The Plaintiff and Class Members are current and former residents of Ohio. (B) The proposed Class

consists of at least 100 members. The D&B Hoovers website and database contains profiles on hundreds of millions of individuals, all of which are used in the advertising techniques described in this Complaint and sold as part of Dun & Bradstreet's subscription products. While Dun & Bradstreet does not publish statistics breaking down the number of profiles by state, a conservative estimate places the number of profiles of current and former Ohio residents in the millions. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Ohio Rev. Code § 274.07 provides for "statutory damages in the amount of at least two thousand five hundred dollars and not more than ten thousand dollars" or "[a]ctual damages, including any profits derived from and attributable to the unauthorized use," plus the possibility of "punitive or exemplary damages." Because Dun & Bradstreet is using the names and personal information of millions of current and former Ohio residents to advertise its website, the amount in controversy is well over the jurisdictional limit.

25. This Court has general personal jurisdiction over Dun & Bradstreet because its headquarters and principal place of business is in this state and district.

26. Venue is appropriate pursuant to 28 U.S.C. § 1391(b). The defendant resides in this district. A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district.

### III. PARTIES

27. Plaintiff Rashad DeBose is a citizen of Ohio. Mr. DeBose resides in Canal Winchester, Ohio.

28. Defendant Dun & Bradstreet Holdings, Inc. is a Delaware corporation with its principal place of business in Short Hills, New Jersey. Defendant owns and operates the website and database D&B Hoovers.

## IV. FACTUAL ALLEGATIONS

29. Plaintiff Rashad DeBose has no relationship with Dun & Bradstreet. He is not a subscriber of the D&B Hoovers database and website. He has never used D&B Hoovers or any other Dun & Bradstreet product.

30. Mr. DeBose did not give consent to Dun & Bradstreet to use his name, personal information, or persona in any way. Had Dun & Bradstreet requested his consent, Mr. DeBose would not have provided it.

31. Dun & Bradstreet uses Mr. DeBose's name and persona in advertisements promoting subscriptions to its D&B Hoovers database and website. Dun & Bradstreet maintains a profile of personal information about Mr. DeBose. The profile accurately states his name, job title, place of work, telephone number, and email address. The profile uniquely identifies Mr. DeBose.

32. Dun & Bradstreet publicly displays at least two versions of Mr. DeBose's profile on the D&B Hoovers website. One version of Mr. Debose's profile is shown below. Plaintiff's counsel used image-editing software to obscure Mr. DeBose's contact information. In the profile that appears on the D&B Hoovers database and website, this information is plainly visible.



33. Dun & Bradstreet publicly displays a second version of Mr. DeBose's profile on the D&B Hoovers website, which is accessible after users click on Mr. DeBose's name in the first profile shown above. The second profile includes additional personal information about Mr. DeBose, including the identities of his work colleagues and "Triggers", which are events in Mr. DeBose's life that D&B Hoovers believes "represent selling opportunities."

34. An illustrative screenshot of the profile corresponding to an unnamed class member is shown below. On information and belief, D&B Hoovers displays a substantially similar profile for Mr. DeBose. For privacy, Plaintiff's counsel have redacted the name and personal information of the unnamed Class member.



35. Dun & Bradstreet provides a landing page on which members of the public can and have searched for Mr. DeBose by name after signing up for a free trial of the D&B Hoovers database. Users may search for contacts including Mr. DeBose and Class Members either by typing their names in the "Search for Contacts" field at the top-right of the page, or by clicking "Search & Build a List" at the top-left.



36. Typing Mr. DeBose's name or the name of another Class Member in the "Search for Contacts" field yields a list of profiles in the D&B Hoovers database matching Mr. DeBose's name. An illustrative screenshot of one such list is shown below. For privacy, Plaintiff's counsel redacted all names and contact information.



37. Users who attempt to download Mr. DeBose's or other Class Members' personal information by clicking the "Download" button receive a pop-up message informing them that they must obtain "Credits" with D&B Hoovers before they can download the information. "Credits" are not provided to users of the free trial version of the D&B Hoovers website, which Dun & Bradstreet makes available to the public. "Credits" are available only to paying subscribers. To download Mr. Debose's and other Class Members' personal information, users must purchase a subscription to the D&B Hoovers website.





38. Free trial access lasts for a limited period of time, typically twenty-four hours. Users who attempt to search for and view Mr. DeBose and Class Members after the free trial has expired are informed they must purchase a subscription to view Mr. DeBose's and Class Members' information.

39. The price of a D&B Hoover's subscription is more than $10,000 per year.

40. Dun & Bradstreet advertises that a subscription to the D&B Hoovers website and database will provide far more than just the ability to view and download Mr. DeBose's personal information. A subscription delivers a variety of services, including: (1) the ability to search, access, and download contact information and personal information of hundreds of millions of individuals; (2) access to "comprehensive intelligence on more than 170 million business records"; (3) "real-time alerts, dynamically updating lists, and personalized buyer intent models."[2]

41. Dun & Bradstreet's sole purpose in using Mr. DeBose's name, contact information, job title, and persona is to solicit subscriptions to the D&B Hoovers database and website.

42. Mr. DeBose does not know how Dun & Bradstreet obtained his personal information.

43. Dun & Bradstreet misappropriated Mr. DeBose's personal information and persona without permission from Mr. DeBose.

44. Mr. DeBose has intellectual property and privacy interests in his name and persona recognized by Ohio statutory and common law. He has the right to exclude anyone from making commercial use of his name and persona without his permission.

---

[2] Quotes available at https://www.dnb.com/ca-en/products/marketing-sales/dnb-hoovers.html.

45. Dun & Bradstreet has injured Mr. DeBose by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information and persona.

46. Dun & Bradstreet's illegal actions caused Mr. Debose mental injury and disturbed his peace of mind. Mr. DeBose is deeply uncomfortable in the knowledge that Dun & Bradstreet is using his name and persona in advertisements for a product with which he has no relationship and which he has no desire to promote.

47. Mr. DeBose believes his name and persona is rightly his to control. Dun & Bradstreet's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. DeBose feels that Dun & Bradstreet's use of his name and persona is an alarming invasion of his privacy.

48. Mr. DeBose believes Dun & Bradstreet's misappropriation and misuse of his name and persona encourages and enables harassing and unwanted sales and marketing communications.

## V. CLASS ACTION ALLEGATIONS

49. Plaintiff asserts claims on behalf of himself and a class of current and former Ohio residents who are not subscribers of D&B Hoovers and whose names and personal information Dun & Bradstreet incorporated in profiles it uses to promote D&B Hoovers. Excluded from the proposed class are: Plaintiff's counsel; Dun & Bradstreet, its officers and directors, counsel, successors, and assigns; any entity in which Dun & Bradstreet has a controlling interest; and the judge to whom this case is assigned and the judge's immediate family.

50. The members of the proposed class are so numerous that joinder of individual claims is impracticable. Dun & Bradstreet has profiles on millions of Ohio residents in its D&B Hoovers database.

51. There are significant questions of fact and law common to the members of the class. These include:

   a. Whether Dun & Bradstreet's misappropriation of names and personal information, and use of that information in the advertising techniques described in this Complaint, constitutes the commercial use of aspects of individuals' personas without previous written consent within the meaning of Ohio Rev. Code § 2741.02;

   b. Whether Dun & Bradstreet solicited and obtained written consent from Plaintiff and the Class prior to using their personas in advertisements promoting its website, as required by Ohio Rev. Code § 2741.02;

   c. Whether Dun & Bradstreet's use of Plaintiff's and Class members' personas in advertisements falls within the exceptions for "material that has political or newsworthy value" or for "broadcast or reporting of an event or topic of general or public interest" within the meaning of Ohio Rev. Code § 2741.09;

   d. Whether Dun & Bradstreet's commercial use of names, likenesses, and personas was "knowing," such that Plaintiff and the Class are entitled to treble damages under Ohio Rev. Code § 2741.07;

   e. Whether Dun & Bradstreet's conduct described in this Complaint violates Ohio common law prohibiting misappropriation of a name or likeness;

   f. Whether Plaintiff and Class members are entitled to the injunctive,

declaratory, monetary, punitive, and other relief requested in this Complaint.

52. Plaintiff's claims are typical of those of the proposed Class. Plaintiff and all members of the proposed Class have been harmed by Dun & Bradstreet's misappropriation and misuse of their names, personal information, and personas in advertisements promoting D&B Hoovers. Dun & Bradstreet presents its advertisements in the same way for each Class member.

53. The proposed class representative will fairly and adequately represent the proposed Class. The class representative's claims are co-extensive with those of the rest of the Class. Plaintiff is represented by qualified counsel experienced in class action litigation of this nature.

54. A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed Class is impracticable. Many members of the Class do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning Dun & Bradstreet's common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

55. The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Dun & Bradstreet has acted on grounds generally applicable to the proposed Class, such that final injunctive and declaratory relief is appropriate with respect to the Class as a whole.

56. The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to Class members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

**FIRST CAUSE OF ACTION**
**Violation of Ohio's Right of Publicity Statute, Ohio Rev. Code § 27401.01,** *et seq.*

57. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

58. Ohio's right of publicity statute prohibits the use of "any aspect of an individual's persona for a commercial purpose" without "first obtain[ing] written consent." Ohio Rev. Code § 2741.02.

59. By engaging in the foregoing acts and omissions, Dun & Bradstreet used aspects of Plaintiff's and Class Members' personas, including their names and personal information, for commercial purposes without consent. These aspects of Plaintiff's and Class members' personas have commercial value as evidenced by Dun & Bradstreet's commercial use. *See* Ohio Rev. Code § 27401.01.

60. Each use of a Class Members' persona in a teaser profile or full profile is a separate and distinct violation of Ohio Rev. Code § 2741.02.

61. Plaintiff and Class Members are individuals whose domiciles or residences are or were in Ohio. *See* Ohio Rev. Code § 2741.03.

62. Ohio Rev. Code § 2741.07 provides that a person who violates the statute is liable at the Plaintiff's election for either (a) "statutory damages in the amount of at least two thousand five hundred dollars and not more than ten thousand dollars," or (b) "[a]ctual damages, including

any profits derived from and attributable to the unauthorized use." The statute also provides for "punitive or exemplary damages" if applicable.

63. The statute authorizes treble damages against "the owners . . . of any medium used for advertising" "who has knowledge of the unauthorized use of the persona." Ohio Rev. Code §§ 2741.02(E) & 2741.07(D)(2). Dun & Bradstreet owns the website www.app.dnbhoovers.com, which is the medium on which it distributes the illegal advertising that is the source of this Complaint. Dun & Bradstreet knows it is using Plaintiff's and Class Members' personas as described in this Complaint.

64. The statute authorizes the award of "reasonable attorney's fees, court costs, and reasonable expenses." Ohio Rev. Code § 2741.07(D)(1).

65. As a result of Dun & Bradstreet's violations of Ohio Rev. Code § 2741.02, Plaintiff and the Class have suffered injury to their privacy rights and actual damages both economic and emotional. Plaintiff and Class Members have been denied the commercial value of their personas, which Dun & Bradstreet misappropriated without compensation to Plaintiff and the Class. Plaintiff and Class Members were denied their statutorily protected right to refuse consent and protect their privacy. Plaintiff and Class Members suffered emotional disturbance from the misappropriation and misuse of their personas.

66. Plaintiff on behalf of the Class seeks: statutory damages; in the alternative, actual damages, including Dun & Bradstreet's profits from its misuse and compensatory damages for the royalties Dun & Bradstreet failed to pay; treble damages in light of Dun & Bradstreet's knowing misuse; punitive damages; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting Dun & Bradstreet's illegal conduct; and declaratory relief.

## SECOND CAUSE OF ACTION
**Misappropriation of Name or Likeness**

67. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

68. Ohio common law recognizes the tort of appropriation of a name or likeness. The tort creates a cause of action for the "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *James v. Bob Ross Buick, Inc.*, 167 Ohio App. 3d 338, 342 (Ohio Ct. App. 2006) (*quotation omitted*).

69. By engaging in the foregoing acts and omissions, Dun & Bradstreet misappropriated Plaintiff's and Class Members' names and likenesses for its own commercial advantage.

70. As provided for under Ohio common law, Plaintiff on behalf of the Class seeks monetary recovery in the amount of the "Monetary benefit [the defendant] received as a result of its wrongful use." *James*, at 345. Plaintiff on behalf of the Class also seeks nominal damages, injunctive relief, punitive damages, and damages for injury to feelings. *See id.* at 344-45.

## PRAYER FOR RELIEF

71. WHEREFORE Plaintiff, individually and on behalf of the Class, requests the following relief:

   (a) For an order certifying the proposed Class and appointing Plaintiff and his counsel to represent the Class;

   (b) For a declaration that Dun & Bradstreet's acts and omissions constitute a knowing misappropriation of names, likeness, personal information, and personas in violation of Ohio law;

   (c) For preliminary and permanent injunctive relief enjoining and preventing Dun &

    Bradstreet from continuing to operate its website without appropriate safeguards to ensure individual's names, personals, and personal information are not used illegally without their consent;

(d) For an award of damages, including without limitation statutory damages, damages for actual harm, profits earned by Dun & Bradstreet, nominal damages, and punitive damages;

(e) For an award of reasonable attorneys' fees and costs incurred by Plaintiff and the Class Members; and

(f) For an award of other relief in law and equity to which Plaintiff and the Class Members may be entitled.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial for all individual and Class claims so triable.

                   Respectfully submitted,
                   LOCKS LAW FIRM, LLC

Dated: January 17, 2022      By: /s/ *James A. Barry*
                   James A. Barry
                   801 N. Kings Highway
                   Cherry Hill, NJ 08034
                   jbarry@lockslaw.com
                   Tel: (856) 663-8200

                   Sam Strauss (to be admitted *Pro Hac Vice*)
                   sam@turkestrauss.com
                   Raina Borrelli (to be admitted *Pro Hac Vice*)
                   raina@turkestrauss.com
                   TURKE & STRAUSS LLP
                   613 Williamson St., Suite 201
                   Madison, Wisconsin 53703-3515
                   Telephone: (608) 237-1775
                   Facsimile: (509) 4423

Benjamin R. Osborn (to be admitted *Pro Hac Vice*)
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

Michael F. Ram (to be admitted *Pro Hac Vice*)
mram@forthepeople.com
Marie N. Appel (to be admitted *Pro Hac Vice*)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

*Attorneys for Plaintiff
and the Proposed Class*