RASHAD DEBOSE,

Plaintiff,

vs.

DUN & BRADSTREET HOLDINGS, INC.,

Defendant.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Case Action No. 2:22-cv-00209-ES-CLW

Hon. Esther Salas, U.S.D.J.

Hon. Cathy L. Waldor, U.S.M.J.

**Oral Argument Requested**

---

DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
COMPLAINT FOR FAILURE TO STATE A CLAIM

---

RIKER DANZIG SCHERER HYLAND &
    PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Federal Bar No. 030491988

Attorneys for Defendant,
Dun & Bradstreet Holdings, Inc.

Of Counsel:
        Michael R. O'Donnell

On the Brief:
        Michael P. O'Mullan
        Desiree McDonald
        Timothy J. Nichols

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................1

FACTUAL ALLEGATIONS.....................................................................3

ARGUMENT .............................................................................................5

I.    PLAINTIFF'S INTERPRETATION OF OHIO'S STATUTORY AND COMMON LAW RIGHT OF PUBLICITY IS OVERBROAD AND FAILS TO STATE A CLAIM.................................................................................................6

    A.    Ohio's Supreme Court and Appellate Courts Narrowly Construe Ohio's Common Law Right of Publicity ..............................................6

    B.    Plaintiff Fails to State a Claim Under Ohio's Statutory Right of Publicity .....9

    C.    D&B's Use of Plaintiff's Name and Business Contact Information Is an "Incidental Use" Which Does Not Give Rise To a Cause of Action for Misappropriation Under Statute or Common Law..........................................11

    D.    Plaintiff's Name and Persona Have No Commercial Value and Are Not Misappropriated For a Commercial Purpose ...................................14

    E.    The "General Public Interest" Exception Bars Plaintiff's Claim ..................17

    F.    The "Literary Works" Exception Bars Plaintiff's Claim ................................19

II.    PLAINTIFF'S PROPOSED APPLICATION OF OHIO'S RIGHT OF PUBLICITY WOULD VIOLATE THE FIRST AMENDMENT ......................................21

    A.    D&B's Hoovers Publication is Noncommercial Speech Entitled to Full Protection Under the First Amendment ............................................21

    B    Plaintiff's Interpretation of Ohio's Publicity Laws Would Not Pass Constitutional Muster……………………………………………………..22

    C.    D&B's Content is Protected By the First Amendment Even if it Constitutes Commercial Speech ...............................................................25

III.    A RULING IN D&B'S FAVOR IS REQUIRED BY OHIO SUPREME COURT AND APPELLATE COURT PRECEDENT, AND NOT GOVERNED BY ABERRANT FEDERAL DISTRICT COURT DECISIONS FROM OUTSIDE OHIO..................26

CONCLUSION .........................................................................................30

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Amansec v. Midland Credit Mgmt.,
  2017 U.S. Dist. LEXIS 18975 (D.N.J. Jan. 20, 2017) ..............................................4

Ariix, LLC v. NutriSearch Corp.,
  985 F.3d 1107 (9th Cir. 2021) .................................................................................22

Balsley v. LFP, Inc.,
  2010 U.S. Dist. LEXIS 152034 (N.D. Ohio Jan. 26, 2010)................................12, 18

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)...................................................................................................6

Best v. Berard,
  776 F. Supp. 2d 752 (N.D. Ill. 2011) ......................................................................18

Boshears v PeopleConnect, Inc.,
  2022 US Dist. LEXIS 54277 (W.D. Wash. Mar. 25, 2022) ....................................27

Bosley v. WildWetT.com,
  2004 U.S. App. LEXIS 11028 (6th Cir. 2004) ........................................................28

Bosley v. WildWetT.com,
  310 F. Supp. 2d 914 (N.D. Ohio 2004)....................................................................28

Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,
  447 U.S. 557 (1980).................................................................................................25

City of Phila. v. Lead Indus. Ass'n,
  994 F.2d 112 (3d Cir. 1993).......................................................................................6

Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n,
  149 F.3d 679 (7th Cir. 1998) ...................................................................................26

Dex Media W., Inc. v. City of Seattle,
  696 F.3d 952 (9th Cir. 2012) ............................................................................ passim

Dobrowolski v. Intelius, Inc.,
  2018 U.S. Dist. LEXIS 240434 (N.D. Ill. May 21, 2018) ................................16, 17

Doe v. TCI Cablevision of Missouri,
  2002 Mo. App. LEXIS 1577 (Mo. Ct. App. July 23, 2002) ...................................23

Dora v. Frontline Video, Inc.,
    15 Cal. App. 4th 536 (Cal. Ct. App. 1993) ........................................................................18

Dryer v. Nat'l Football League,
    55 F. Supp. 3d 1181 (D. Minn. 2014) .................................................................................23

ETW Corp. v. Jireh Publ'g, Inc.,
    332 F.3d 915 (6th Cir. 2003) ..............................................................................................21

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,
    499 U.S. 340 (1991) .............................................................................................................20

Guglielmi v. Spelling-Goldberg Prods.,
    603 P.2d 454 (Cal. 1979) .....................................................................................................20

Harper & Row, Publrs. v. Nation Enters.,
    471 U.S. 539 (1985) .............................................................................................................20

Harvey v. Sys. Effect, LLC,
    154 N.E.3d 293 (Ohio Ct. App. 2020) ........................................................................ *passim*

Health Sys. Agency of N. Va. v. Va. State Bd. of Med.,
    424 F. Supp. 267 (E.D. Va. 1976) ..........................................................................21, 22, 30

Hicks v. Casablanca Records & Filmworks,
    464 F. Supp. 426 (S.D.N.Y. 1978) .....................................................................................20

Housh v. Peth,
    133 N.E.2d 340 (Ohio 1956).................................................................................................9

IMDb.com Inc. v. Becerra,
    962 F.3d 1111 (9th Cir. 2020) .............................................................................................23

Jackson v. Playboy Enters., Inc.,
    574 F. Supp. 10 (S.D. Ohio 1983) ...........................................................................9, 14, 29

James v. Bob Ross Buick, Inc.,
    167 Ohio App. 3d 338 (Ohio Ct. App. 2006) ...............................................................10, 13

Jones v. Option One Mortg.,
    2010 U.S. Dist. LEXIS 108406 (S.D. Ohio)........................................................................9

Knapke v. PeopleConnect,
    2021 U.S. Dist. LEXIS 150249 (W.D. Wash., Aug. 10, 2021) .....................................27, 28

Kolebuck-Utz v. Whitepages,
    2021 US Dist. LEXIS 77300 (W.D. Wash. Apr. 22, 2021)............................................27, 29

Landham v. Lewis Galoob Toys, Inc.,
    227 F.3d 619 (6th Cir. 2000) ................................................................10

Loft v. Fuller,
    408 So. 2d 619 (Fla. Dist. Ct. App. 1981) ...............................................17

Lukis v. Whitepages, Inc.,
    454 F. Supp.3d 746 (N.D. Ill. 2020) ................................................27, 30

McFarland v. Miller,
    14 F.3d 912 (3d Cir. 1994)......................................................................10

Nat'l Elec. Mfrs. Ass'n v. Sorrell,
    272 F.3d 104 (2d Cir. 2001)....................................................................26

Nieman v. Versuslaw, Inc.,
    2012 U.S. Dist. LEXIS 109069 (C.D. Ill. Aug. 3, 2012)....................15, 16, 18, 19,

Nieman v. Versuslaw, Inc.,
    512 F App'x 635 (7th Cir. 2013) .............................................................26

O'Toole v. Northrop Grumman Corp.,
    499 F.3d 1218 (10th Cir. 2007) ................................................................4

Obado v. Magedson,
    2014 U.S. Dist. LEXIS 104575 (D.N.J. July 31, 2014)..........................16

Panico v. Portfolio Recovery Assocs., LLC,
    879 F.3d 56 (3d Cir. 2018)........................................................................6

Pearson v. Edgar,
    153 F.3d 397 (7th Cir. 1998) ...................................................................25

Peck v. McCann,
    525 F. Supp. 3d 1316 (D. Colo. 2021) ....................................................24

Reed v. Town of Gilbert,
    576 U.S. 155 (2015)................................................................................23

Roe v. Amazon.com,
    714 Fed. Appx. 565 (6th Cir. 2017).........................................................12

Rogers v. Grimaldi,
    875 F.2d 994 (2d Cir. 1989).....................................................................16

S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publrs.,
    756 F.2d 801 (11th Cir. 1985) .................................................................20

Sarver v. Chartier,
    813 F.3d 891 (9th Cir. 2016) ....................................................................................22

Shabazz v. ICWU Ctr. For Worker Health & Safety Educ.,
    2021 U.S. Dist. LEXIS 247839 (S.D. Ohio Dec. 30, 2021) ....................................13

Shibley v. Time, Inc.,
    341 N.E.2d 337 (Ohio Ct. App. 1975) ...................................................8, 9, 13, 24

Siegel v. ZoomInfo Technologies, LLC,
    2021 US Dist. LEXIS 180351 (N.D. Ill. Sep. 22, 2021) ...................................27, 30

Silha v. ACT, Inc.,
    807 F.3d 169 (7th Cir. 2015) ....................................................................................14

State ex rel. Petty v. Wurst,
    550 N.E.2d 214 (Ohio Ct. App.) ..........................................................................4, 11

Stayart v. Google Inc.,
    710 F.3d 719 (7th Cir. 2013) ..............................................................................16, 19

Thompson v. Getty Images (US), Inc.,
    2013 U.S. Dist. LEXIS 91828 (N.D. Ill. July 1, 2013) .....................................16, 17

TransUnion LLC v. Ramirez,
    141 S. Ct. 2190 (2021) ........................................................................................14, 15

United States v. Alvarez,
    567 U.S. 709 (2012) ..................................................................................................24

Vinci v. American Can Co.,
    591 N.E.2d 793 (Ohio Ct. App. 1990) .....................................................................11

Virginia State Bd. of Pharm. v. Va. Citizens Consumer Council,
    425 U.S. 748 (1976) ..........................................................................15, 24, 26, 28

Vrdolyak v. Avvo, Inc.,
    206 F. Supp. 3d 1384 (N.D. Ill. 2016) ...................................................15, 22, 26

Zacchini v. Scripps-Howard Broadcasting Co.,
    351 N.E.2d 454 (Ohio 1976) .......................................................................... *passim*

Zacchini v. Scripps-Howard Broadcasting Co.,
    433 U.S. 562 (1977) .............................................................................................20, 24

**Statutes**

17 U.S.C. § 101 ............................................................................................................20

Cal. Civ. Code § 1798.100...................................................................................11

Ohio Rev. Code § 2741......................................................................................3

Ohio Rev. Code 2741.01................................................................9, 10, 11, 14, 28

Ohio Rev. Code § 2741.02.....................................................................9, 15, 18

Ohio Rev. Code § 2741.09.................................................................................19

**Rules**

Fed. R. Civ. P. 12(b)(1)......................................................................................5

Fed. R. Civ. P. 12(b)(6)...................................................................................5, 6

**PRELIMINARY STATEMENT**

In this case, Plaintiff mischaracterizes Ohio's publicity laws in an effort to obtain money damages and class action attorneys' fees from Dun & Bradstreet ("D&B") for engaging in constitutionally-protected publishing activity.   D&B's Hoovers ("Hoovers") is a business-to-business subscription database containing the names, job titles and business contact information of thousands of people – including Plaintiff – that businesses purchase access to for marketing and other purposes.   Plaintiff does not allege that Hoovers contains: (1) any protected confidential personal data, such as social security number or private home address, about him or anyone else; (2) any false or defamatory information; (3) any information that portrays him in a false light, or reveals secret details of his personal life; or (4) credit reporting or credit rating information about him or anyone else.   Moreover, tellingly, Plaintiff does not allege the Hoovers database reflects a purported express or implicit endorsement of Hoovers by him.   Instead, he hangs his lawsuit on the mere inclusion of his name, job title, employer, and business contact information in Hoovers, and D&B's offer of a free trial of this publication to potential subscribers who might see this information when they type in a sample search.

Plaintiff's claims should be dismissed.   His theory is based on a recklessly overbroad interpretation of Ohio law that is not only contradicted by well-established Ohio case law construing the common law and statutory right of publicity, but would also violate D&B's First Amendment rights.   Nothing in Ohio's publicity laws purports to preclude D&B from listing the true facts of Plaintiff's name, job title, employer and business contact information in the Hoovers database.   Indeed, quite the contrary; there are several exceptions to those laws that expressly accommodate the publication of such information of public interest, which is fully protected by the First Amendment.   And the fact that Plaintiff's information may be returned when a potential

1

subscriber uses D&B's free trial of Hoovers does not alter the analysis.  D&B is not publishing advertisements for Hoovers or any other D&B publication or product using Plaintiff's name or persona.  As the Complaint makes clear, Plaintiff's business information simply *might* appear in a *demonstration of the publication* because it is contained within it.

At bottom, if adopted, Plaintiff's interpretation of Ohio's publicity laws would provide him and many other Ohio citizens the unilateral ability to preclude the free flow of important information in our society, including:

- Every online searchable, fee-based phonebook, yellow pages, professional directory and other similar directory relating to Ohio residents absent their consent;

- Every searchable fee-based news website, magazine, encyclopedia or other database that contains information about Ohio residents absent their consent;

- Every Ohio employer's website that identifies its Ohio-resident employees in connection with an e-commerce site, a for-profit business or even a municipality absent the consent of each listed Ohio resident-employee; and

- Every fee-based criminal background search, or publication of court records, such as Lexis, Westlaw or other services, relating to an Ohio resident absent the consent of the subject Ohio resident.

That is surely not what Ohio publicity laws require or intend.

## FACTUAL ALLEGATIONS

Plaintiff Rashad DeBose is an individual resident of Ohio, who purports to sue on behalf of a class consisting of all current and former Ohio residents who have no relationship with D&B and have never used Hoovers or consented to D&B's use of their names and "personas." (Complt. ¶¶2-3, 5.)

D&B is a leading global provider of business decision-making data and analytics. (See Annual Report at pp. 2, 6-7 (cited at Complt. ¶15, n.1). D&B's Hoovers publication is a sales and marketing database that allows business-to-business professionals to research continuously updated business data about companies and their employees. (See id.; see also www.dnb.com/products/marketing-sales/dnb-hoovers.html  (cited at Complt. ¶40, n.2.)

Plaintiff asserts that D&B used his and putative class members' names and personas in the Hoovers database without consent, and that doing so violates Ohio's right of publicity statute, Ohio Rev. Code § 2741, and Ohio's common law prohibiting misappropriation of an individual's name or likeness. (Id. ¶2.) Plaintiff further complains that D&B's use of free trials of the Hoovers publication is an unlawful "advertising" use of his persona in violation of the publicity laws. (Id. ¶¶8-9) (complaining that D&B "advertises" and "promotes" the Hoovers database by publicly displaying information about Plaintiff and class members showing aspects of their personas "including their names, contact information, job titles, place of work, and the identities of the work colleagues.").

More specifically, Plaintiff alleges that third-parties who sign up for a free trial on the Hoovers website may query the database and use it to obtain certain information contained in the database, including Plaintiff's name, job title, place of work, telephone number and email address.

(Id. ¶¶9, 31.)[1]  According to the Complaint, this information for Plaintiff is:



(Id. ¶32.)  Although Plaintiff's counsel has redacted Plaintiff's "contact information" as it appears on Hoovers, the context of the information that is shown makes it clear that all of the information relates to the City of Columbus contact information, not to Plaintiff's home or personal information.

Plaintiff concedes that this information is accurate.  (Id. ¶31.)  Plaintiff also concedes that he and class members may have shared their names, contact information, job descriptions and job titles with companies or individuals in a variety of contexts, including, for example, posting such information on the employer's websites or other professional networking websites.  (Id. ¶18.)[2] Similarly, the business contacts of Plaintiff's work colleagues at the City of Columbus and the

---

[1] When a potential subscriber using a Hoovers trial types in information about a business contained in the database, including the name of Plaintiff, the information is displayed to the potential subscriber, as it would be for any subscriber.

[2] Indeed, much of the information displayed regarding Plaintiff in paragraph 32 of the Complaint is publicly available on Plaintiff's own public LinkedIn profile and all of it is necessarily publicly-available by virtue of the fact that he is a public employee. See https://www.linkedin.com/in/rashad-debose-21239864; State ex rel. Petty v. Wurst, 550 N.E.2d 214, 216 (Ohio Ct. App.) (finding that Ohio county employee's name, classification or job title, salary rate and gross pay is public information not entitled to protection from public disclosure in accordance with R.C. 149.43 and public policy).  The Court may take judicial notice of the content of Plaintiff's online professional networking profile given his allusion to it in paragraph 18 of the Complaint.  See Amansec v. Midland Credit Mgmt., 2017 U.S. Dist. LEXIS 18975 (D.N.J. Jan. 20, 2017) (taking judicial notice of website listing entity's headquarters); see also O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web").

information pleaded about other Ohio absent class members in the Complaint are neither false nor confidential.  (See id. ¶¶33-36.)

Plaintiff contends that in order to download his full profile information or continue using the Hoovers database after the free trial, third parties must purchase a Hoovers subscription.  (Id. ¶¶37-38.)  Per the Plaintiff, therefore, the "sole purpose" of D&B using his accurate, name, job title and business contact information is "to solicit subscriptions."  (Id. ¶41.)  That said, Plaintiff acknowledges that his and the class members' business information is "part of [D&B's] Hoovers subscription product".  (Id. ¶5.)

Finally, Plaintiff pleads that the true facts of his and class members' name and employment details "have commercial value" but asserts no facts in support of that allegation.  (See id. ¶¶14-15.)  Rather, he pleads in circular fashion that this alleged commercial value "is demonstrated by the exploitation of their names, personal information, photographs, likenesses, and personas for commercial gain by Dun & Bradstreet and [its] competitors."  (Id. ¶14.)

## ARGUMENT

Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the Ohio Supreme Court and Court of Appeals have narrowly construed the Ohio publicity rights at common law (Section I.A.) and under Ohio's publicity statute (Section I.B.), and have recognized exceptions for "incidental use" (Section I.C.), lack of "commercial value" or "commercial purpose" (Section I.D.), "public interest" (Section I.E.) and "literary works" (Section I.F.), each of which bars Plaintiff's claims.  Moreover, as set forth in Section I.D., Plaintiff's failure to plead actionable commercial value in his name undermines his injury in fact, and therefore deprives the Court of Article III standing.  See Fed. R. Civ. P. 12(b)(1).  Plaintiff's interpretation of his Ohio publicity rights as applied also would violate the First Amendment's protection of the free flow of

true information of public interest.  (Section II.)  Finally, D&B anticipates that Plaintiff will rely on a small set of district court decisions outside of Ohio for his argument.  As set forth below, those nonbinding cases are inapposite.  (Section III.)

## I.   PLAINTIFF'S INTERPRETATION OF OHIO'S STATUTORY AND COMMON LAW RIGHT OF PUBLICITY IS OVERBROAD AND FAILS TO STATE A CLAIM

In construing issues of Ohio law, this Court must look to the guidance of the Ohio Supreme Court.  See Panico v. Portfolio Recovery Assocs., LLC, 879 F.3d 56, 58 (3d Cir. 2018) (a federal court's "role is to apply the law of the appropriate jurisdiction").  Even "[w]hen the state's highest court has not addressed the precise question presented, a federal court must predict how the state's highest court would resolve the issue."  City of Phila. v. Lead Indus. Ass'n, 994 F.2d 112, 123 (3d Cir. 1993).

Notwithstanding the familiar and liberal standard of F.R.C.P. 12(b)(6) requiring that all facts pled in the Complaint be accepted as true,[3] controlling Ohio case law leaves no basis to find D&B's inclusion of Plaintiff's name, job title and business contact information in its business-to-business Hoovers database is a violation of Ohio's publicity laws.  Nor does D&B's offer of free access to the Hoovers publication coupled with a subscription offer violate those laws.

### A.   Plaintiff Fails to State a Claim Under Ohio's Common Law Right of Publicity

Ohio's common law right of publicity, as discussed by the Ohio Supreme Court in Zacchini v. Scripps-Howard Broadcsting Co., 351 N.E.2d 454 (Ohio 1976), rev'd on other grounds, 433 U.S. 562 (1977), is an individual's right to the exclusive use of the reputation, prestige or other value associated with his or her own name, likeness and identity for publication purposes. Zacchini, 351 N.E.2d at 458, 458 n.4.  As the court made clear, this right is narrowly construed.

---

[3] See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The right is violated only by "'the *unwarranted* appropriation or exploitation of one's personality.'" Id. at 456 (quoting Housh v. Peth, 133 N.E.2d 340 (Ohio 1956) (emphasis added)). Thus it is **not** violated by: (1) "mere mention of" an individual's name, Zacchini, 351 N.E.2d at 458 n.4 (citing Restatement (Second) of Torts § 652C (1975) cmt. d); (2) mere "reference to [an individual's name] in connection with legitimate mention of his [or her] public activities," id.; (3) the publication of an individual's likeness "for purposes other than taking advantage of his [or her] reputation, prestige, or other value associated with him [or her], for purposes of publicity," id. (emphasis added); (4) bringing before the public an individual's name or appearance, as "neither is in any way a private matter and both are open to public observation," id.; and (5) "report[ing] matters of legitimate public interest even though such reports might intrude on matters otherwise private," id. at 461.

Thus, as a matter of Ohio law, inclusion of Plaintiff's name and employment in Hoovers business database does not misappropriate Plaintiff's publicity rights because:

- The publication merely references (i.e., is an "incidental use" of) his name and business contact information;

- Discusses his public employment; and

- Does not depend or trade on his reputation or prestige or other value associated with him.

These limitations recognized by the Ohio Supreme Court fundamentally constrain the right of publicity and give rise to the specific exceptions to the tort set forth in Section I.C. through Section I.E. below.

Plaintiff's common law right of publicity claim fails for the additional reason that he has failed to plead facts plausibly demonstrating that his name, likeness or identity has commercial

value independent of D&B's use of it.  Id.  As the Ohio Court of Appeals recently explained, the "the tort's primary focus is the value of a person's name, vis-à-vis **his or her ability to market it for commercial purposes**."  Harvey v. Sys. Effect, LLC, 154 N.E.3d 293, 308 (Ohio Ct. App. 2020) (emphasis added).  Thus, the test is not whether D&B's inclusion of **the fact** that Plaintiff is a municipal Housing Rehabilitation Technician has some value to the database as a whole, but whether that fact has commercial value for marketing purposes **by Plaintiff** due to his prestige, reputation or some other value unique to him.  See id.; accord Section I.D. infra.  Plaintiff has not alleged that he could have marketed his name and status as a Housing Rehabilitation Technician for the City of Columbus, nor could he; Ohio law does not give Plaintiff the right to profit from, or limit the disclosure of, such true public business facts relating to his position as a municipal employee.  Instead, he attempts to seize on the commercial value that D&B has built over many years and through extensive efforts and expense to gather, assimilate and link such true public facts to useful business analysis on its Hoovers database.  (See Complt. ¶¶14-15.)  In short, D&B is not misappropriating the value of Plaintiff's persona; Plaintiff is trying to misappropriate the value of the Hoovers database for his litigation purposes.

Indeed, Plaintiff's argument has already been addressed and foreclosed by the Ohio Court of Appeals in Shibley v. Time, Inc., 341 N.E.2d 337 (Ohio Ct. App. 1975).  In Shibley, the court held that magazine publishers' sale of their subscriber lists to direct mail advertisers without the consent of Ohio subscribers did not violate the Ohio subscribers' right of publicity.  Id. at 72-73. This was so, the court held, even if it amounted to a sale of "personality profiles" enabling "buyers of these lists . . . to draw certain conclusions about the financial position, social habits, and general personality of the persons on the lists by virtue of the fact that they subscribe to certain publications," and even though "this information is then used in determining the type of

advertisement to be sent."  Id. at 339 (further noting plaintiff's argument that the defendant was "unjustly enriched at the subscribers' expense").  The subscribers' right of publicity would have been violated only if "the plaintiff's name or likeness [was] displayed to the public to indicate that the plaintiff indorses the defendant's product or business."  Id. (citing Housh v. Peth, 133 N.E.2d 340 (Ohio 1956) and W. Prosser, Law of Torts § 117 (4th ed. 1971)); accord Jones v. Option One Mortg., 2010 U.S. Dist. LEXIS 108406, at *16 (S.D. Ohio).  Because the plaintiffs' allegations did not "fall within that classification," the court affirmed the trial court's dismissal of the right of publicity claim.  Id.

So it is here.  Plaintiff does not plead that D&B expressly or impliedly used his name and business information to endorse Hoovers or D&B.  He merely complains that D&B shares his name and business contact information with those willing to purchase the Hoovers publication in which that information is contained.  There is no meaningful distinction between this case and Shibley, and therefore plaintiff has failed to state a claim under the common light right of publicity.  See Section I.C. infra.

### B.  Plaintiff Fails to State a Claim Under Ohio's Statutory Right of Publicity

After the Ohio Supreme Court recognized Ohio's common law right of publicity in Housh, which it later addressed in Zacchini, the Ohio Legislature enacted Ohio's statutory right of publicity, which contains similar limitations.  Ohio. Rev. Code § 2741.01 et seq.  The statute provides that "[e]xcept as otherwise provided in this section, a person shall not use any aspect of an individual's 'persona' for a commercial purpose . . ."  Ohio Rev. Code § 2741.02(A).  Like the common law right, the statutory right requires that the plaintiff's persona have independent commercial value.  See Jackson v. Playboy Enters., Inc., 574 F. Supp. 10, 13 (S.D. Ohio 1983) (finding the plaintiffs could not establish a misappropriation claim because they "have not given any indication that their likenesses have value *in and of themselves* which could be taken by

9

someone else for his or her benefit") (emphasis added); Ohio Rev. Code § 2741.01(A). "Persona" is defined narrowly as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, '**_if any of these aspects have commercial value_**'" Ohio Rev. Code 2741.01(A) (emphasis added).   As discussed above, because Plaintiff does not allege there is commercial value in his or the class members' personas _standing alone_, (see Complt. ¶14 (referencing the commercial value of D&B's publication)), there is no claim under the statute. While Plaintiff need not be a national celebrity to assert a right of publicity claim, he must at least "demonstrate that there is value in associating an item of commerce with [his] identity." Landham v. Lewis Galoob Toys, Inc., 227 F.3d 619, 624 (6th Cir. 2000); see also McFarland v. Miller, 14 F.3d 912, 919-20 (3d Cir. 1994) (stating that the right of publicity is worthless without association). "It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other value associated with the name or the likeness that the right of privacy is invaded." James v. Bob Ross Buick, Inc., 167 Ohio App. 3d 338, 343 (Ohio Ct. App. 2006).   Here, there is none.

Except for his name, the categories of information that Plaintiff asserts in his Complaint, including "contact information, job titles, place of work, and the identities of their work colleagues" are not included in the definition of persona, and thus, such information is not protected under Ohio's right of publicity statute.   (See Complt. ¶8; see also Ohio Rev. Code 2741.01(A)).  Further, Plaintiff has no right, whether property or otherwise, in any of these other categories of information.  Plaintiff does not "own" or have a publicity right in his employer's email address or telephone number.  Plaintiff also does not possess any rights to the job titles created by his employer or information about other individuals the municipality hires to be Plaintiff's colleagues.  See State ex rel. Petty, 550 N.E.2d at 216 (finding that disclosure of a

county employee's name, classification or job title, salary rate and gross pay is public information and subject to the "public's right to know"); see also Ohio Rev. Code § 125.20(A)(1) (mandating the establishment of an "an electronic site accessible through the internet to publish" a database listing each state employee's gross pay for the most recent pay period, including the state employee's name, position, title and employing state agency).  As a matter of law, Plaintiff cannot show that his City of Columbus information is protected as part of his right of publicity under Ohio law.[4]

C.    **D&B's Use of Plaintiff's Name and Business Contact Information Is an "Incidental Use" Which Does Not Give Rise to a Cause of Action for Misappropriation Under Statute or Common Law**

The inclusion of facts concerning Plaintiff's employment in D&B's Hoovers publication also falls within Ohio law's "incidental use" exclusion.  The Zacchini Court noted that there is no misappropriation of a person's name, likeness or identity when such use is "incidental." Zacchini, 351 N.E.2d at 458 n.4 (citing to Comment d to the Restatement (Second) § 652C).  In numerous Ohio cases decided since, the courts have made clear that the exception applies even where the use is far less incidental than it is here:

In Vinci v. American Can Co., 591 N.E.2d 793 (Ohio Ct. App. 1990), Minute Maid Corporation and the United States Olympic Committee entered into a partnership for the sale of promotional Dixie cups with names, likenesses and information of Olympic athletes.  Id. at 793.

---

[4] Plaintiff's overbroad reading of the Ohio publicity statute would also make it broader than the farthest-reaching data privacy statutes in the United States.  No such laws require in all cases, as Plaintiff's reading of Ohio's right of publicity law does, prior affirmative consent to collect, use, share, or otherwise process personally identifying information.  See, e.g., the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 et seq. ("CCPA") (consumers may opt out of their information being shared).  It is beyond unreasonable to think the Ohio Supreme Court would find that Ohio publicity law provides greater barriers to the use of Plaintiff's true business information than the CCPA and other privacy legislation do for more sensitive personal information.

The Ohio Court of Appeals held that such a use was incidental because the reference to the athletes' names and their accomplishments was purely informational; it merely contained accurate historical facts with no implication that the athletes used, supported or promoted the product.  Id. at 794. Thus there was no misappropriation of publicity rights.

Similarly, in Balsley v. LFP, Inc., 2010 U.S. Dist. LEXIS 152034 (N.D. Ohio Jan. 26, 2010), Hustler Magazine published images of a news broadcaster at a wet t-shirt event. Id. at *1-4.  The District Court found that the images and brief commentary, including plaintiff's name, as well as "factual and historical information of [p]laintiff's public activities," did not suggest the news broadcaster endorsed or promoted Hustler Magazine, leading the District Court to deem the use incidental and not a violation of her publicity rights under Ohio common law or statute.  Id. at *25-26.

In Roe v. Amazon.com, 714 Fed. Appx. 565 (6th Cir. 2017), corporate distributors and the author of an erotic novel were sued by a married couple whose image was taken from the internet and used by the author on the cover of the novel without permission. Id. at 566-67. The U.S. Court of Appeals for the Sixth Circuit affirmed there was no evidence of any commercial value associated with the image and the incidental use of the image was not actionable as a publicity claim under Ohio common law or statute. Id. at 569.

In Harvey v. Sys. Effect, LLC, 154 N.E.3d 293 (Ohio Ct. App. 2020), a continuing education training company for real estate brokers created a class specifically targeted to Ohio which included a case study involving a couple who sold their home without disclosing termite damage. Id. at 298. References to this couple were on three slides out of a 200-page class presentation.  Id.  The Court found the use of the names to be incidental.  Id. at 307.  See also Shabazz v. ICWU Ctr. For Worker Health & Safety Educ., 2021 U.S. Dist. LEXIS 247839 *19

(S.D. Ohio Dec. 30, 2021) (finding a reference to plaintiff in application for federal grant was purely informational and incidental to obtaining funds).

Even cases reaching the opposite outcome support the argument that the alleged use of Plaintiff's information by D&B is incidental.  Thus, in Bob Ross Buick, Inc., the Ohio Court of Appeals found a car dealership violated the publicity law when it sent 33 advertisement letters in the name of a since-terminated employee to customers.  Bob Ross Buick, Inc., 855 N.E.2d at 121. The appellate court found the use of the former employee's name was not incidental, and had commercial value, because the letters were sent to the former employee's assigned customers to induce future sales to those customers.  Id. at 123.  Thus, unlike the present case, the defendant improperly appropriated the plaintiff's name for the very purpose of soliciting his former customers, making it appear the advertisement had been sent in his name.

Under the rationale of each of these cases, D&B's use of Plaintiff's information is an incidental use.  As in Vinci, Plaintiff's name is merely presented in the database, much like the Olympic athletes' names, likenesses and historical information were presented on the Dixie cups. The use of Plaintiff's name in the database in no way indicates Plaintiff used, supported or promoted the database, and Plaintiff makes no allegation to the contrary.  If Olympic athletes did not have viable publicity rights in Vinci, certainly Plaintiff and the class members, none of whom are alleged to be celebrities or otherwise notable for their achievements, do not on the facts of this case.  As in Harvey, Plaintiff's name is one of allegedly millions of contacts searchable on the database, akin to the 3 slides out of 200 discussing the homeowners.  And as in Shibley, Plaintiff's name and business contact information is simply contained in a compilation of data that is sold by the compiler.  Because the inclusion of Plaintiff's name and business information is merely

incidental to D&B's creation and sale of a subscription to access a complete database, Plaintiff has failed to state a claim under Ohio's statutory right of publicity.

### D.   Plaintiff's Name and Persona Have No Commercial Value and Are Not Misappropriated For a Commercial Purpose

As set forth above, Ohio's publicity laws relate solely to the misappropriation of an individual's name and persona where they have commercial value for publicity purposes, such as by trading on the individual's prestige or reputation for marketing purposes. See Zacchini, 351 N.E.2d at 458, n.4; Harvey, 154 N.E.3d at 308-09. Plaintiff's claim fails because the critical commercial value under Ohio law is **not** the value to D&B of including the public fact that he is a Housing Rehabilitation Technician for the City of Columbus in the Hoovers database (see Complt. ¶¶14-15), but rather that Plaintiff's reputation or prestige has commercial value to market a product. See supra at p. 15. Plaintiff has not, and cannot, allege that his name had commercial value such that he could have marketed it for a commercial purpose. Therefore, Plaintiff cannot maintain a right of publicity claim against D&B under Ohio law. See Playboy Enters., Inc., 574 F. Supp. at 13 (finding the plaintiffs could not establish a misappropriation claim because they "have not given any indication that their likenesses have value ***in and of themselves*** which could be taken by someone else for his or her benefit") (emphasis added); Ohio Rev. Code § 2741.01(A).

For this same reason, Plaintiff is unable to plausibly plead an actionable injury in fact. See e.g. TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2205 (2021) ("creation of a statutory prohibition . . . and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III any more than, for example, Congress's enactment of a law regulating speech relieves courts of their responsibility to independently decide whether the law violates the First Amendment"); Silha v. ACT, Inc., 807 F.3d 169, 174-75 (7th Cir. 2015) ("It follows that a plaintiff's claim of injury in fact cannot be

based solely on a defendant's gain; it must be based on a plaintiff's loss."). Here, Plaintiff's failure to plead an actionable basis for commercial value undermines his injury in fact, and therefore his standing. See TransUnion, 141 S. Ct. at 2205 ("Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.") (emphasis in original).

In that vein, Ohio's right of publicity statute expressly addresses the use of an individual's persona only where the use is "***for a commercial purpose***". Ohio Rev. Code § 2741.02(A)(emphasis added).  Plaintiff alleges that D&B used his identity for a commercial purpose by displaying "names, contact information, job titles, place of work, and the identities of their work colleagues" in its Hoovers database.  (Complt. ¶¶ 8, 19.)  But the fact that D&B makes the publication of those facts available for sale is irrelevant to the analysis. Using information from a constitutionally protected publication to display that publication cannot be unlawful.  See Dex Media W., Inc. v. City of Seattle, 696 F.3d 952 (9th Cir. 2012).  Moreover, "economic motive in itself is insufficient to characterize a publication as commercial."  Id. at 960 (citing Bolger v. Youngs Drug Prod. Corp., 463 U.S. 60, 67 (1983)).  Speech "is protected even though it is carried in a form that is "sold" for profit, and even though it may involve a solicitation to purchase or otherwise pay or contribute money." Virginia State Bd. of Pharm. v. Va. Citizens Consumer Council, 425 U.S. 748, 761 (1976).  Courts have consistently held that "[t]he for-profit nature of . . . aggregation websites does not change the analysis; speech is protected even when 'carried in a form that is "sold" for profit.'"  Nieman v. Versuslaw, Inc., 512 F App'x 635, 638 (7th Cir. 2013); Vrdolyak v. Avvo, Inc., 206 F. Supp. 3d 1384 (N.D. Ill. 2016).

In Dobrowolski v. Intelius, Inc., 2018 U.S. Dist. LEXIS 240434 (N.D. Ill. May 21, 2018), the court found that an online directory similar to Hoovers does not use a person's identity for a

"commercial purpose" under the Illinois Right of Publicity Act ("IRPA") simply because a search for the plaintiff's name yielded a preview of the defendant's background report.  The Court explained that the plaintiffs' "identities [were] not being used for commercial purposes" because they "[were] not used to promote a separate product — they [were] used because plaintiffs' identities [were] part of the product offered for sale."  Id.  at *10-11.

Similarly, in Thompson v. Getty Images (US), Inc., 2013 U.S. Dist. LEXIS 91828 (N.D. Ill. July 1, 2013), the court found that Illinois's IRPA statute's commercial purpose requirement did not prohibit the sale of someone's photograph simply because the website permitted a search for a particular image.  Rather, the right of publicity statute only prohibited the use of an individual's image to promote or entice the purchase of some product other than the photograph itself.  Id.  at *5; see also Rogers v. Grimaldi, 875 F.2d 994, 1004 (2d Cir. 1989).

Other courts, including this one, have similarly recognized that the mere ability to search a website for information relating to an individual does not trigger publicity rights.  See, e.g., Obado v. Magedson, 2014 U.S. Dist. LEXIS 104575, at *24 (D.N.J. July 31, 2014) ("The mere appearance of [p]laintiff's name or image as part of the search results displayed in response to a user-generated query does not mean that the relevant company used [p]laintiff'[s] name for advertising or trade purposes."); Nieman, 2012 U.S. Dist. LEXIS 109069 at *4 (dismissing IRPA claim because plaintiff's identity was not used for commercial purposes where his name could be searched to find public court documents relating to plaintiff and was "not being held out or used to entice anyone to buy a product"); Stayart v. Google Inc., 710 F.3d 719, 722 (7th Cir. 2013) (rejecting claim that Google misappropriated plaintiff's name because "Google merely reports the results of its search of publicly available websites").

By Plaintiff's faulty logic, giving away the "A" section of a telephone directory or encyclopedia as a free sample in the hope that the recipient would like the product and buy the other sections would violate the publicity rights of all those Ohio residents found in the free section.  But that is not what the law intends.  Akin to Dobrowolski and Thompson, Plaintiff's contact information was merely a fact that is "part of the product offered for sale."  Accordingly, that use is not a "commercial purpose" under the Ohio right of publicity statute.  Moreover, as set forth above, D&B's dissemination of publicly available facts such as names and work information of municipal employees is not a prohibited commercial purpose under Ohio law.  See supra at I.A., I.B.  See also Loft v. Fuller, 408 So. 2d 619, 622-23 (Fla. Dist. Ct. App. 1981) (holding that the term "commercial" "was [not] meant to be construed to bar the use of people's names in [any] sweeping fashion[,]" but to "prevent the unauthorized use of a name to directly promote the product or service of the publisher").  As such, D&B's use is exempt from liability.

**E.      The "General Public Interest" Exception Bars Plaintiff's Claim**

As set forth above, Ohio's Supreme Court recognizes that a key "exception" to the Ohio right of publicity is the privilege to report on matters of legitimate public interest.  Zacchini, 351 N.E.2d at 461, 461 n.5 (noting that "report[ing] matters of legitimate public interest even though such reports might intrude on matters otherwise private" is not actionable); id. at 466 ("reference to [an individual's name] in connection with legitimate mention of his public activities" or bringing before the public an individual's name or appearance are not actionable, as "neither is in any way a private matter and both are open to public observation").  As set forth in Point II infra, the First Amendment right to publish business information precludes any alleged right to publicity Plaintiff possesses in his name.

Ohio's Right of Publicity Statute also expressly exempts, among other things, the "use of an aspect of an individual's persona in connection with the broadcast or reporting of an event or

topic of general or public interest." Ohio Rev. Code §§ 2741.02(D)(1); 2741.09(A)(1)(b) (noting the statute does not apply to material of "newsworthy value"); 2741.09(A)(6) (excluding information protected by the First Amendment so long as it does not convey an endorsement). Under these exceptions, the "use of a person's identity primarily for the purpose of communicating information . . . is not generally actionable[.]"  See Harvey, 154 N.E.3d at 308 (quoting ETW v. Jireh Publ'g, Inc., 332 F.3d 915, 930) (6th Cir. 2003) (emphasis omitted).  Information and events can be in the "public interest" under Ohio's Right of Publicity Statute even if they "involve[] the publication of a purely private person's name or likeness."  Balsley v. LFP, Inc., 2010 U.S. Dist. LEXIS 152034, at *27 (N.D. Ohio Jan. 26, 2010) (citation omitted).  Indeed, it is axiomatic that "the public is interested in and constitutionally entitled to know about things, people, and events that affect it[,]" which includes "subjects that do not relate to politics or public policy, and may not even be important, but are of interest." Dora v. Frontline Video, Inc., 15 Cal. App. 4th 536, 545-46 (Cal. Ct. App. 1993).  The interest need not be widespread; it suffices if it "is of more than passing interest to some."  Id. at 539.

Here, the Hoovers content undoubtedly falls within this exception.  Hoovers provides access to lawful, accurate and useful business information of general interest.  Moreover, Plaintiff is a public employee.  As the Seventh Circuit has explained, "[t]he newsworthiness or public interest exception should be construed broadly, covering . . . any subject of public interest." Bogie, 705 F.3d at 614 (citation omitted) (affirming dismissal of Wisconsin right of publicity claim). Courts thus have dismissed publicity claims under the public interest exception where the allegedly infringing work contained information including an individual's name, even when no public figure or journalistic context was involved.  See, e.g., Best v. Berard, 776 F. Supp. 2d 752, 758 (N.D. Ill. 2011) (facts relating to arrest); Nieman, 2012 U.S. Dist. LEXIS 109069 at *4 (facts relating to

litigation); Stayart,710 F.3d at 723 (same).  The access to that information in the Hoovers free trial

and subscription offer does not undermine that purpose — enabling a user to insert an individual's

name into the database during a free trial, or other search criteria that results in that individual's

profile appearing, is not an attempt to trade on that individual's name or likeness for publicity but

rather an attempt to demonstrate D&B's Hoovers database of useful and newsworthy information

of public interest.[5]   Accordingly, the information at issue is subject to the public interest exception.

### F.    The "Literary Works" Exception Bars Plaintiff's Claim

The Ohio Right of Publicity statute does not apply to any of the following:

> (a) [a] literary work, dramatic work, fictional work, historical work,
> audiovisual work, or musical work regardless of the media in which
> the work appears or is transmitted, other than an advertisement or
> commercial announcement not exempt under division (A)(1)(d) of
> this section;
> (b) Material that has political or newsworthy value;
> (c) [o]riginal works of fine art; [or]
> (d) [a]n advertisement or commercial announcement for a use
> permitted by division (A)(1)(a), (b), or (c) of this section.

Ohio Rev. Code § 2741.09(A)(1)(a)-(d).  The "literary work" exception bars Plaintiff's claim.

Although the Ohio right of publicity statute does not define "literary works," that term is defined

in the federal Copyright Act, which is also addressed to intellectual property rights,[6] as "works. . .

---

[5] Further, Courts in Ohio and elsewhere have also held that this exception applies to the
republication of information of public interest. See, e.g., Harvey, 154 N.E.3d at 309 (applying
exemption where use of plaintiff's identity involved facts relating to prior legal proceeding that
"had been reported in various publications"); Nieman, 2012 U.S. Dist. LEXIS 109069, at *12
(C.D. Ill. Aug. 3, 2012), aff'd, 512 F. App'x 635 (7th Cir. 2013) (applying similar exemption to
dismiss right of publicity claim against online searchable database of court records because
"[p]laintiff's prior litigation is a matter of public record and public interest"); Stayart, 710 F.3d at
723 (same).  Plaintiff concedes he and the class members may have made the information
contained in Hoovers publicly available on professional networking sites, other websites, or
elsewhere.  See p. 4 supra.

[6] The right of publicity "is in the nature of a property right, for the exercise of which an exclusive
license may be given to a third person, which will entitle such a licensee to maintain an action to
protect it."  Zacchini, 351 N.E.2d at 458.

expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied."  17 U.S.C. § 101.  The United States Supreme Court has held that compilations of facts are entitled to copyright protection as literary works if they contain a minimum level of creativity.  See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 348 (1991) ("[E]ven  a directory that contains absolutely no protectable written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement."); see also S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publrs., 756 F.2d 801, 809 (11th Cir. 1985) (recognizing that a directory can receive copyright protection as a "literary work[]" under  17 U.S.C. § 101).[7]

D&B's Hoovers publication is therefore a "literary work."  It is a compilation of data that requires judgment as to what information to include (such as which businesses, employees, etc.) and how to organize and present that data.  (See Complt. ¶32).  Specifically, Hoovers compiles information about businesses and other entities, like Plaintiff's employer, the City of Columbus, including business contacts for its employees.  Moreover, D&B continuously updates its Hoovers database  with  selected  information  through  extensive  efforts  and  expense  as  a  tool  to  help

---

[7] The United States Supreme Court has made clear that one cannot own a copyright in facts alone. Harper & Row, Publrs. v. Nation Enters., 471 U.S. 539, 547 (1985) ("[N]o author may copyright facts or ideas. The copyright is limited to those aspects of the work -- termed 'expression' -- that display the stamp of the author's originality.") (internal citation omitted). Plaintiff and the class members do not own intellectual property rights  in the facts about themselves that D&B is publishing.  There is also an analogy to "fair use" doctrine in copyright law. As a parodist or other publisher may use aspects of a copyrighted work without infringing the copyright, an author may make fair use of the names and likenesses of real individuals without violating their rights of publicity. See Zacchini v. Scripps-Howard Broad. Co., 433 U.S. 562 (1977); Hicks v. Casablanca Records & Filmworks, 464 F. Supp. 426 (S.D.N.Y. 1978); Guglielmi v. Spelling-Goldberg Prods., 603 P.2d 454 (Cal. 1979) (Bird, C.J., concurring).

businesses generate sales leads relating to other businesses.  As such, Hoovers is exempt under the Ohio statute as a "literary work."

## II.    PLAINTIFF'S PROPOSED APPLICATION OF OHIO'S STATUTORY AND COMMON LAW RIGHT OF PUBLICITY WOULD VIOLATE THE FIRST AMENDMENT

Plaintiff's theory of liability – that D&B cannot publish information of general interest to the public without the consent of Plaintiff and the class members – would violate D&B's First Amendment rights. "The right of publicity as recognized by statute and common law is fundamentally constrained by the public and constitutional interest in freedom of expression." ETW Corp. v. Jireh Publ'g, Inc., 332 F.3d 915, 930 (6th Cir. 2003) (quoting Restatement, § 47, comment c) (emphasis added).  As the Sixth Circuit observed in ETW Corp., "Ohio is inclined to give substantial weight to the public interest in freedom of expression when balancing it against the personal and proprietary interests recognized by the right of publicity."  Id. at 931 (citing Zacchini).  Here the balance tips decisively in favor of D&B's right of free expression.

### A.    D&B Hoovers is Noncommercial Speech Entitled to Full Protection Under the First Amendment

Courts have routinely held that full First Amendment protection, rather than the reduced protection afforded to commercial speech, applies in the analogous context of directories of names, addresses, phone numbers, and other identifying information. See, e.g., Dex Media W., Inc. v. City of Seattle, 696 F.3d 952, 954 (9th Cir. 2012) ("[Y]ellow pages directories qualify for full protection under the First Amendment."); Health Sys. Agency of N. Va. v. Va. State Bd. of Med., 424 F. Supp. 267, 272–73 (E.D. Va. 1976) (publication of physician information, including name and phone number, protected by First Amendment).

Further, "economic motive in itself is insufficient to characterize a publication as commercial." Dex Media W., Inc., 696 F.3d at 960 (citing Bolger v. Youngs Drug Prod. Corp.,

463 U.S. 60, 67 (1983)).  For example, in <u>Vrdolyak v. Avvo, Inc.</u>, 206 F. Supp. 3d 1384 (N.D. Ill. 2016), the defendant operated the website Avvo.com on which it published a directory of attorneys.  It created a profile page for each attorney that consisted of information "such as bar admissions and other court or regulatory records" as well as the attorney's name, education, address, phone number, and practice area.  <u>Id.</u>  at 1385-86.  The Court found that although the site hosted advertising as part of its business model, it nevertheless was protected by the First Amendment from an Illinois Right of Publicity Act claim because the website was analogous to a yellow pages directory. <u>Id.</u>; <u>accord</u> <u>Dex Media</u>, 696 F.3d at 960; <u>Health Sys. Agency of N. Va.</u>, 424 F. Supp. at 272–73.

Here, the Hoovers publication unquestionably constitutes noncommercial speech, and it is therefore afforded the highest level of protection under the First Amendment.  There is no meaningful distinction between the Hoovers directory and a yellow pages directory, a directory of attorney information, or a physician directory.  The fact that D&B sells subscriptions to its Hoovers database does not mean that publication is not constitutionally-protected speech.  Indeed, "a simple profit motive to sell copies of a publication or to obtain an incidental economic benefit, without more, does not make something commercial speech. Otherwise, virtually any newspaper, magazine, or book for sale could be considered a commercial publication." <u>Ariix, LLC v. NutriSearch Corp.</u>, 985 F.3d 1107, 1117 (9th Cir. 2021).  Accordingly, Hoovers is fully protected, noncommercial speech.

## B.    Plaintiff's Interpretation of Ohio's Publicity Laws Would Not Pass Constitutional Muster.

Right of publicity laws regulate speech based on the message conveyed (i.e., speech about aspects of one's persona) and are therefore content-based restrictions on speech. <u>See, e.g.</u>, <u>Sarver v. Chartier</u>, 813 F.3d 891, 903 (9th Cir. 2016) ("By its terms, California's right of publicity law

clearly restricts speech based upon its content."); see also Reed v. Town of Gilbert, 576 U.S. 155, 156 (2015) ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."); IMDb.com Inc. v. Becerra, 962 F.3d 1111, 1117 (9th Cir. 2020) (applying strict scrutiny to restrictions imposed on internet movie database); Doe v. TCI Cablevision of Missouri, 2002 Mo. App. LEXIS 1577, at *25-26 (Mo. Ct. App. July 23, 2002), rev'd on other grounds Doe v. TCI Cablevision, 110 S.W.3d 363, 374 (Mo. 2003) ("[The plaintiff] asks the state to compel payment for the alleged misappropriation of his identity and an injunction banning all speech using his identity in fiction, except on terms he alone dictates. This is a content-based restriction on speech."); cf. Dryer v. Nat'l Football League, 55 F. Supp. 3d 1181, 1188 (D. Minn. 2014), aff'd on other grounds, 814 F.3d 938 (8th Cir. 2016) (in evaluating right-of-publicity claim, "some courts examine whether the work being challenged is commercial or non-commercial speech" and that "if the Court determines that the productions at issue are expressive, non-commercial works," a right-of-publicity claim would fail because "content-based restrictions on non-commercial speech are appropriate 'only in the most extraordinary circumstances'" (quoting Bolger v. Youngs Drug Prods. Corp, 463 U.S. 60, 65 (1983))).   As the Supreme Court has explained, "[c]ontent-based laws" are "presumptively unconstitutional" and are subject to strict scrutiny – i.e., they "may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Reed, 576 U.S. at 163; Dex Media W., Inc., 696 F.3d at 965-66 (holding an ordinance regulating a yellow pages phone book did not survive strict scrutiny and therefore violated the First Amendment).

If given the interpretation advanced by Plaintiff, Ohio's right of publicity laws cannot pass

constitutional muster.[8]   Plaintiff does not even attempt to set forth what "compelling interest" conceivably exists that would justify the extraordinary restriction on speech he seeks – a restriction requiring consent before one can publish factual business information about another.   This case does not present a circumstance, like in Zacchini, where the media "broadcast[s] a performer's entire act without his consent," thereby usurping the plaintiff's ability to make a living. See Zacchini, 433 U.S. 562 at 575.

Plaintiff does contend that D&B's publication of his professional information "encourages and enables harassing and unwanted sales and marketing communications."  (Complt. ¶ 48.)  But protecting people from sales and marketing communications is not an interest sufficient to support state suppression of speech. See, e.g., Va. State Bd. of Pharmacy, 425 U.S. at 773 (holding that State may not "suppress the dissemination of concededly truthful information about entirely lawful activity" and therefore law prohibiting pharmacists from advertising prescription drug prices was unconstitutional); Shibley, 341 N.E.2d at 337 (dismissing a misappropriation of publicity claim finding that defendant's sale of lists containing plaintiffs' names, addresses and "personality profiles" to advertisers did not violate Ohio law and was constitutionally permissible); cf. United States v. Alvarez, 567 U.S. 709, 716-17 (2012) (setting forth the categories of speech that are wholly unprotected by the First Amendment, none of which are applicable here).

Here, Plaintiff cannot show that prohibiting the dissemination of true information of general interest, much less publicly-available information such as names and work information of

---

[8] Put differently, Ohio's publicity laws would be unconstitutionally overbroad if applied in the fashion that Plaintiff requests.  See, e.g., Marc Rohr, Parallel Doctrinal Bars: The Unexplained Relationship Between Facial Overbreadth and "Scrutiny" Analysis in the Law of Freedom of Speech, 11 Elon L. Rev. 95, 109, 129 (2019); see also Peck v. McCann, 525 F. Supp. 3d 1316, 1339 (D. Colo. 2021) (noting that "the Supreme Court itself has not provided clear guidance on when and how scrutiny tests versus overbreadth should apply").

employees, serves a compelling state interest.  Indeed, the *opposite* is true; there is a compelling state interest in facilitating trade by enabling businesses to more effectively market their products and services to each other.  Nor is Plaintiff's expansive interpretation of the law narrowly tailored to serve any purported state interest.  Plaintiff offers a construction of Ohio law that would have a chilling effect for those that provide or refer to true facts of general public interest.  His seemingly limitless proposed application of the statute would prohibit the mere appearance of an individual's name as part of search results displayed in response to a user-generated query without consent.  In short, Plaintiff's interpretation of Ohio's right of publicity laws would render those laws unconstitutional content-based restrictions on speech.

### C.    D&B's Content is Protected by the First Amendment Even if it Constitutes Commercial Speech

Even were the Court to conclude that D&B's content is commercial speech, it is nevertheless entitled to "substantial protection" under the First Amendment and any restrictions imposed on such speech "must survive intermediate scrutiny." Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n, 447 U.S. 557, 564–65 (1980)).  To survive intermediate scrutiny, there must be: (1) "a substantial interest"; (2) supporting a restriction that "directly advances that substantial interest"; and (3) the restriction must be "narrowly drawn." Id.  The second and third prongs are analyzed together to determine if there is a "reasonable fit" between the restriction on the speech at issue and the "goal to be achieved by that restriction."  Pearson v. Edgar, 153 F.3d 397, 401, 402–03 (7th Cir. 1998) (citation omitted).

Here, for the same reasons set forth above, Plaintiff does not even come close to pleading sufficient facts to survive intermediate scrutiny.  First, Plaintiff does not allege the speech is "misleading [or] related to unlawful activity," and thus, there is no substantial interest in its regulation. Central Hudson, 447 U.S. at 564; see also Va. State Bd. of Pharmacy, 425 U.S. at 773

(holding that State may not "suppress the dissemination of concededly truthful information about entirely lawful activity").  In fact, Plaintiff concedes that this basic demographic information is entirely accurate.  As the Second Circuit has recognized, "[p]rotection of the robust and free flow of accurate information is the principal First Amendment justification for protecting commercial speech."  Nat'l Elec. Mfrs. Ass'n v. Sorrell, 272 F.3d 104, 114 (2d Cir. 2001).

Moreover, there is no "reasonable fit" between Ohio's right of publicity's goal—preventing unauthorized commercial endorsements—and barring D&B's publication of search results that identify persons included in its Hoovers database.  As set forth above, the Plaintiffs' overbroad construction of the statute is not "narrowly drawn" to serve any purported state interest.  Thus, even under intermediate scrutiny, the First Amendment bars Plaintiff's claim.[9]

## III.   A RULING IN D&B'S FAVOR IS REQUIRED BY OHIO SUPREME COURT AND APPELLATE COURT PRECEDENT, AND NOT GOVERNED BY ABERRANT FEDERAL DISTRICT COURT DECISIONS FROM OUTSIDE OHIO

This class action is one of several cases recently filed or pending in federal district courts outside Ohio asserting similar (but not identical) publicity claims relating to websites.  See, e.g., Kolebuck-Utz v. Whitepages, 2021 US Dist. LEXIS 77300 (W.D. Wash. Apr. 22, 2021); Knapke v. PeopleConnect, 2021 U.S. Dist. LEXIS 150249, (W.D. Wash., Aug. 10, 2021); Siegel

---

[9] The fact that D&B provides such information on a subscription basis does not eliminate or minimize the protection afforded by the First Amendment.  Courts have consistently held that "[t]he for-profit nature of . . . aggregation websites does not change the analysis; speech is protected even when 'carried in a form that is "sold" for profit.'"  Nieman, 512 F App'x at 638; Vrdolyak, 2016 U.S. Dist. LEXIS 123578 at *10. That is because "speech does not lose its First Amendment protection because money is spent to project it, as in a paid advertisement of one form or another. Speech likewise is protected even though it is carried in a form that is "sold" for profit, and even though it may involve a solicitation to purchase or otherwise pay or contribute money." Va. State Bd. of Pharm., 425 U.S. at 761. See also Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n, 149 F.3d 679, 685 (7th Cir. 1998)("A speaker's publication does not lose its status as protected speech simply because the speaker advertises the publication.").

v. ZoomInfo Technologies, LLC, 2021 US Dist. LEXIS 180351 (N.D. Ill. Sep. 22, 2021); Lukis v. Whitepages, Inc., 454 F. Supp.3d 746 (N.D. Ill. 2020); Boshears v. PeopleConnect, Inc., 2022 US Dist. LEXIS 54277 (W.D. Wash. Mar. 25, 2022). D&B anticipates that Plaintiff will rely on those courts' denials of motions to dismiss in support of his opposition to this motion. Those decisions are neither controlling nor persuasive here for several reasons.

As a preliminary matter, the facts of all of the cases are distinguishable from this action because this case involves information that is *publicly available by statute*. The information at issue is Plaintiff's business contact information, and Plaintiff is a government employee. As set forth above, such information about a public employee is not merely a matter of public record, but expressly subject to Ohio's right to know law. See Wurst, 550 N.E.2d at 216. Publication of it is also plainly protected by the First Amendment.

The cases also cannot be relied on because their analyses of the law missed the mark. In Knapke v. PeopleConnect, 2021 U.S. Dist. LEXIS 150249 (W.D. Wash. Aug. 10, 2021), the Western District of Washington was called upon to construe the Ohio publicity statute. There, the plaintiff alleged that she discovered that Classmates.com used her name and photo to advertise to her former classmates certain products and services including reprinted yearbooks and social media subscriptions to allow former classmates to "keep in touch." Id. at *2, 13-14. The court noted that "Knapke expressly does not challenge the sale of her information in the yearbooks" but rather "seeks to prevent the commercial use of her images to sell access to yearbooks and other subscription services to connect old classmates." Id. at 16.

In denying PeopleConnect's motion to dismiss, the Court erred in finding that plaintiff's persona "[was] used to make the advertisement, which shows its commercial value." Id. The court's circular logic essentially eliminated the requisite element of commercial value from the

statute as outlined above.   Under Ohio Rev. Code 2741.01(A), one's "persona" must have "***commercial value***." (emphasis added).[10]

The court also improperly found that the website at issue was commercial speech and protection under the First Amendment was questionable, "given that it misappropriate[d] [plaintiff's] persona and potentially misleads the public."  Id. at 17.  This holding – that speech is commercial when its "purpose" is to "entic[e] viewers into buying" a website's services – is directly contrary to the established case law of the United States Supreme Court. Speech is commercial if it "does no more than propose a commercial transaction."  Va. State Bd. of Pharmacy, 425 U.S. at 776.  See supra at Section II.  Thus, as set forth above, the unreported Knapke decision is not owed any deference on its analysis of the First Amendment issues or Ohio law. 2021 U.S. Dist. LEXIS 150249, at *21-24.[11]

Similarly, in Kolebuck-Utz v. Whitepages Inc., 2021 U.S. Dist. LEXIS 77300, at *2 (W.D. Wash. Apr. 22, 2021), another Western District of Washington case involving the Ohio publicity statute, the plaintiff alleged that the defendant "used her name and likeness in its free previews and advertisements" to "'entice users to purchase Whitepages' services.'"  In a cursory

---

[10] The court also improperly rejected the "public affairs" exception, finding that the plaintiff's yearbook photo and name in the advertisement did not qualify as news, public affairs or reporting on an event of general or public interest.  Id. at 14.  Notwithstanding the foregoing, the Court recognized the application of the "literary works" exception and found that advertising yearbooks for purchase was an advertisement of a "literary work" and thus exempt from the statute.  Id.  at 17-18.  So too here.  See supra at I.F.  Although the Court found that Classmates' subscription service to "'keep in touch' with other classmates" was not a literary work, that finding does not apply here.  2021 U.S. Dist. LEXIS 150249, at *19.  Unlike PeopleConnect, Hoovers does not provide an additional "keep in touch" social media service.

[11] The Knapke court relied on Bosley v. WildWetT.com, 310 F. Supp. 2d 914 (N.D. Ohio 2004), which had entered a preliminary injunction based on its First Amendment analysis concluding that the speech at issue there was commercial speech entitled to no protection.  But the Sixth Circuit stayed that preliminary injunction, finding "[t]he present case 'illustrates the difficulty drawing bright lines that will clearly cabin commercial speech in a distinct category.'"  Bosley v. WildWetT.com, 2004 U.S. App. LEXIS 11028 (6th Cir. 2004).

review of the requirement under the Ohio statute that the plaintiff's persona have independent "commercial value," the court ignored the cases cited above.  See supra at Section I.C.  Instead, it found (once again in circular fashion) that the plaintiff alleged that her name had commercial value because it was used to entice users to purchase a subscription service.  Id. at 5.  However, as set forth above, Ohio courts have recognized that "the complaint must allege that plaintiff's name or likeness has some intrinsic value, which was taken by defendant for its own benefit, commercial or otherwise."  Playboy Enters., Inc., 574 F. Supp. 10 at 13.  See Zacchini, 351 N.E.2d at 458 n.4 (mere mention of a person's name or reference to person in connection with public activity, rather than trading on person's reputation or prestige for publicity, is not misappropriation).  See supra at Section I.D.  As set forth above, the only value of Plaintiff's name pleaded here is the value to Hoovers of the demographic facts of his (and thousands of other persons') employment, not from Plaintiff's own reputation, prestige or other value for publicity purposes.

     In addition, the court erred in finding that the alleged use of the plaintiff's persona was commercial speech.  Id.  As discussed above, courts have consistently classified the directories of names, addresses, phone numbers, and other identifying information as non-commercial speech.  See, e.g., Dex Media, 696 F.3d at 954 ("[Y]ellow pages directories qualify for full protection under the First Amendment.");  Health Sys. Agency of N. Va., 424 F. Supp. at 272–73 (publication of physician information is protected).  Further, "economic motive in itself is insufficient to characterize a publication as commercial."  Dex Media W., Inc., 696 F.3d at 960 (citing Bolger v. Youngs Drug Prod. Corp., 463 U.S. 60, 67 (1983)).

     Siegel and Lukis are premised on Illinois' Right of Publicity and Boshears is premised on Indiana's Right of Publicity.  But those laws do not include the requirement that an

29

individual's "identity" have "commercial value," and therefore decisions construing them are of limited utility.  Moreover, those courts did not consider all of the exceptions set forth here.  The courts' logic turned on their conclusion that the plaintiff's name and likeness was being used to advertise simply because the websites at issue permitted prospective customers to perform a free search that was ultimately coupled with a purchase offer.  As set forth above, however, that faulty logic is inconsistent with Ohio law.  See also Zacchini, 351 N.E.2d at 458 n.4.

At bottom, as set forth above, if these courts' interpretations of the law of publicity were to prevail, it would undermine the protections for reporting true facts and up-end the free flow of information that plays an important role in our society.  See supra at p. 2 (illustrating repercussions of extension of Plaintiff's logic to other important exchanges of information).  Thus, to interpret Ohio's right of publicity as Plaintiff suggests would not only undermine existing Ohio precedent, but would preclude D&B and other fee-based services from the ability to demonstrate and offer their product to society.

## CONCLUSION

For each of the foregoing reasons, Dun & Bradstreet's motion to dismiss the complaint should be granted and the Complaint should be dismissed with prejudice.

Respectfully submitted,

RIKER DANZIG SCHERER HYLAND
  & PERRETTI LLP

 Attorneys for Defendant,
 Dun & Bradstreet Holdings, Inc.

By:/s/ Michael R. O'Donnell
   Michael R. O'Donnell

Date:  March 30, 2022

30