Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RASHAD DEBOSE,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>DUN & BRADSTREET HOLDINGS, INC.,<br><br>　　　　　Defendant. | Civil Action No. 22-0209 (ES) (JRA)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant Dun & Bradstreet Holdings, Inc.'s ("Defendant" or "D&B") motion to dismiss plaintiff Rashad DeBose's ("Plaintiff") proposed class action complaint (D.E. No. 1 ("Complaint" or "Compl.")). (D.E. No. 9-1). Having considered the parties' submissions, having held oral argument on Defendant's motion to dismiss (D.E. No. 105), and for the reasons set forth below, Defendant's motion to dismiss is **GRANTED**. Plaintiff's Complaint is **DISMISSED** *with prejudice*.

**I.　　BACKGROUND**

Plaintiff is an Ohio resident who alleges, on behalf of a purported class, that D&B used his name and persona to promote paid subscriptions to Defendant's website ("D&B Hoovers website") without his consent in violation of (i) Ohio's Right of Publicity Statute ("ORPS") (Ohio Rev. Code § 2741.01) (Count I), and (ii) Ohio common law, which prohibits the misappropriation of an Ohioan's name or likeness (Count II). (*See, e.g.*, Compl. ¶ 2). According to the Complaint, the D&B Hoovers website contains a database with the names, personal information, and personas of tens of millions of Ohioans. (*Id*. ¶ 6). Plaintiff maintains D&B uses his name, contact information,

job title, work history, colleagues' identities, and other personal information in the form of public profiles to advertise and/or promote paid subscriptions to the D&B Hoovers website and database without his consent. (*Id.* ¶¶ 4–5; *see id.* ¶¶ 8, 12 & 31). Plaintiff alleges that D&B is the sole author, designer, implementor, curator, and creator of the D&B Hoovers website, database, profiles, the alleged "advertisements" for the database, and "the on-site messages it uses to convert free trial users to paying subscribers." (*Id.* ¶ 13). Thus, D&B does not host any user-generated content. (*Id.*).

Those who sign up for a free trial of the D&B Hoovers database may view and, allegedly, have viewed Plaintiff and other proposed class members' profiles containing their names and personas. (*Id.* ¶ 9; *see also id.* ¶ 35 (alleging that the website's landing page provides a search feature where visitors "can and have searched for [Plaintiff's] name after signing up for a free trial of the D&B Hoovers database")). If, during the course of a free trial, a user attempts to download Plaintiff's profile, the user allegedly must purchase a subscription to obtain the download. (*Id.* ¶ 10). Plaintiff maintains the free trial lasts for a limited period, typically twenty-four hours. (*Id.* ¶ 38). Once a free trial ends, a user must purchase a subscription for continued access to Plaintiff's profile. (*Id.* ¶ 11).

Full access to the D&B Hoovers database costs more than $10,000 per year and is sold to salespeople and marketers. (*Id.* ¶¶ 7 & 39). Subscribers to the D&B Hoovers database allegedly use personal information contained in the database to "send personalized sales and marketing communications" and/or "unwanted solicitations" to people listed in the database, including Plaintiff. (*Id.* ¶¶ 7 & 19).

Neither Plaintiff nor the proposed class provided D&B with their names, contact, and work-related information. (*Id.* ¶ 3). In addition, Plaintiff maintains he did not consent to D&B's

2

commercial use of his name, contact, and work-related information to promote subscriptions to the D&B Hoovers website and database. (*Id.* ¶¶ 19–20 & 30). Although Plaintiff alleges he does not know how D&B obtained his information (*id.* ¶ 16), he admits that that he may have consented to posting his name on an employer's website or on a professional networking site (*id.* ¶ 18).

Plaintiff contends that D&B displays at least two versions of his public profile on the D&B Hoovers website, including (i) a "preview profile" and (ii) an "expanded profile."[1] (*Id.* ¶¶ 32 & 34). The preview profile, as depicted in the Complaint with a redaction, is reproduced below:



(*Id.* ¶ 32). As shown above, the preview profile displays the following information: (i) Name – "Rashed DeBose"; (ii) Job Title & Employer – "Housing Rehabilitation Technician at City of Columbus"; (iii) Location – "Columbus, Ohio, United States [redacted]"; (iv) Links – "Direct Dial," "Email," LinkedIn, Twitter (now X), Facebook; and (v) Other – "Executive and Legislature."

The expanded profile, as depicted in the Complaint with multiple redactions,[2] is reproduced below:

---

[1]   The terms "preview profile" and "expanded profile" do not appear in the Complaint; however, during oral argument counsel agreed that these characterizations are accurate. (Tr. at 11:20).

[2]   Plaintiff's redactions to these "publicly [available] displays" seem counterintuitive. (*See* Compl. ¶ 32 (noting that D&B "publicly displays at least two versions of Mr. DeBose's profile on the D&B Hoovers website"); *see id.* ¶ 33)). In addition, the screenshot depicted below in paragraph 34 of the Complaint appears to be the expanded profile of a purported class member, not Plaintiff. (*Id.* ¶ 34 (alleging that "[o]n information and belief, D&B Hoovers displays a substantially similar [expanded] profile for Mr. DeBose")).

3



(*Id.* ¶ 34). Plaintiff asserts the expanded profile is accessible *after* users click on his name in the preview profile. (*Id.* ¶ 33). As shown above, the expanded profile displays the following information: (i) Name – [Redacted]; (ii) Job Title & Area of Employment – "Director, Market Research"; (iii) General Title / Work Industry – "Marketing Executive"; (iv) Location – "New Albany, Ohio 43054-8482, United States"; (v) Social Media Links – LinkedIn, Twitter (now X), and Facebook; (vi) Other – "Public Parent" and "D-U-N-S® [redacted]" and (vii) Various Links[3] – "Report Builder OneStop," "Colleagues 270," and "Triggers 35." (*Id.* ¶ 34). According to the Complaint, the expanded profile allegedly includes the identities of Plaintiff's colleagues as well as "Triggers," which the Complaint describes as "events in Mr. DeBose's life that D&B Hoovers believes 'represents selling opportunities.'" (*Id.* ¶ 33). The Complaint contains no further

---

[3] It is unclear whether the content behind these links is accessible for free by anyone who visits the D&B Hoovers website and/or those who sign up for a free trial.

explanation or examples of "Triggers." (*See generally id.*).

The Complaint depicts a screenshot including a list of preview profiles that allegedly appears after a search is conducted. (*Id.* ¶ 36). A "download" button is in the upper right-hand corner of the search results list. (*Id.*). According to the Complaint, if users attempt to download Plaintiff's or other purported class members' personal information, they will receive a "pop-up message informing them that they must obtain 'Credits' with D&B Hoovers before they can download the information."[4] (*Id.* ¶ 37). "Credits" allegedly are not provided to those who opt for a free trial of the D&B Hoovers website; rather, "'Credits' are available only to paying subscribers." (*Id.*). At the same time, Plaintiff also alleges that "[u]sers who attempt to search for and view [his information] after the free trial has expired are informed they must purchase a subscription." (*Id.* ¶ 38).[5]

Plaintiff maintains that D&B advertises numerous features of its subscription service, beyond "the ability to view and download [Plaintiff's] personal information." (*Id.* ¶ 40). Specifically, a D&B subscription allegedly provides: "(1) the ability to search, access, and download contact information and personal information of hundreds of millions of individuals; (2) access to 'comprehensive intelligence on more than 170 million business records'; (3) 'real-time alerts, dynamically updating lists, and personalized buyer intent models.'" (*Id*. (quoting D&B products marketing/sales website)). Plaintiff asserts D&B's "sole purpose" in using his name, information, and persona "is to solicit subscriptions to the D&B Hoovers database and website." (*Id.* ¶ 41).

Plaintiff alleges he has both intellectual property and privacy interests in his name and

---

[4] The Complaint contains screenshots of these images, but they are blurry and difficult to decipher. (*Id.* ¶ 37).
[5] The differences between "Credits" and paid subscriptions, if any, are unclear from the allegations.

persona under Ohio statutory and common law; as a result, he claims to have the right to exclude D&B's commercial use of his persona without his permission. (*Id*. ¶¶ 44 & 47). Plaintiff maintains D&B took his intellectual property without compensation and invaded his privacy rights. (*Id*. ¶ 45). He further alleges that D&B is "unlawfully profiting from its exploitation of his personal information and persona." (*Id*.). Plaintiff "believes [D&B's] misappropriation and misuse of his name and persona encourages and enables [others to send] harassing and unwanted sales and marketing communications." (*Id.* ¶ 48). He therefore alleges that D&B has caused him "mental injury and disturbed his peace of mind." (*Id*. ¶ 46).

Defendant's motion to dismiss the Complaint is fully briefed. (D.E. No. 9 ("Mov. Br."); D.E. No. 18 ("Opp. Br."); D.E. No. 29 ("Reply Br.")). At the Court's request, the parties also filed supplemental briefing. (D.E. Nos. 58 & 61). In addition, because this case presents an issue that remains unresolved by the Ohio Supreme Court (*see* D.E. No. 106 ("Tr.") at 24:2–3 & 25:4), the parties collectively filed at least fifteen notices of supplemental authority with additional case law from other circuit and district courts. (D.E. Nos. 42, 50, 51, 53, 62, 66, 71, 74, 79, 80, 84, 85, 94, 98 & 101). The Court held oral argument (D.E. No. 105), and thereafter granted D&B's request to file a final supplemental submission on a recent decision from the Sixth Circuit Court of Appeals, which had been pending at the time of oral argument. (D.E. Nos. 111 & 112; Tr. at 24:3–10). D&B supplemented (D.E. No. 114), and Plaintiff filed a response (D.E. No. 115).

## II.    LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). However, the Court "disregard[s] threadbare recitals of

6

the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'" (alteration in original) (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004))).  Thus, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

## III.     DISCUSSION

The ORPS provides that "a person shall not use any aspect of an individual's persona for commercial purpose . . . [d]uring the individual's lifetime" without that individual's written consent. Ohio Rev. Code § 2741.02(A)(1). The statute defines "persona" as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." *Id.* § 2741.01(A). "Commercial purpose" includes, in relevant part, "the use of or reference to an aspect of an individual's persona . . . [o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities" or "[f]or advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities" not expressly exempted. *Id.* § 2741.01(B)(1)–(2). The "right of publicity" is "the property right in an individual's persona to use the individual's persona for a commercial purpose." *Id.* § 2741.01(D). The potential remedies for a violation of the ORPS include actual damages, statutory damages, punitive damages, and injunctive relief. *Id.* § 2741.07(A) & (D). The remedies provided under the ORPS "are in addition to any other remedies provided for by state . . . common law." *Id.* § 2741.08.

In addition, the Ohio common law tort of "appropriation of name or likeness" is "a well-recognized branch of the more general tort of interference with the right of privacy." *Zacchini v. Scripps-Howard Broad. Co.*, 351 N.E.2d 454 (Ohio 1976) (first citing *Housh v. Peth*, 133 N.E.2d 340 (Ohio 1956); and later citing Restatement of Torts 2d § 652C)), *rev'd on other grounds*, 433 U.S. 562 (1977). This tort claim, like the ORPS, subjects a defendant to liability "when he 'appropriates to his own use or benefit the name or likeness of another.'" *Roe v. Amazon.com*, 714 F. App'x 565, 568 (6th Cir. 2017) (quoting *Zacchini*, 351 N.E.2d at 458, n.4); *Retuerto v. Berea Moving Storage & Logistics*, 38 N.E.3d 392, 406 (Ohio Ct. App. 2015) (stating that a plaintiff

8

must show "appropriation, for the defendant's advantage, of the plaintiff's name or likeness"). As with the ORPS, to state a claim, "plaintiffs must demonstrate that their name or likeness has value." *Roe*, 714 F. App'x at 568 (first citing *Zacchini*, 351 N.E.2d at 458, n.4, and then citing *James v. Bob Ross Buick, Inc.*, 855 N.E.2d 119, 123 (Ohio Ct. App. 2006)).[6]

As a preliminary matter, "[a] federal court under *Erie* is bound to follow state law as announced by the highest state court." *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007). Where, as here,[7] "that state's highest court has not provided guidance," the district court "is charged with predicting how that court would resolve the issue." *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253–54 (3d Cir. 2016); *see also Lupu v. Loan City, LLC*, 903 F.3d 382, 389 (3d Cir. 2018). "In so doing, [the district court] must look to decisions of [the] state['s] intermediate appellate courts." *Lupu*, 903 F.3d at 389. Moreover, when a decision by the state's intermediate appellate court "rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the [jurisdiction] would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).

In addition, when a district court predicts how a state's highest court would decide an issue, it "must look to decisions of . . . federal courts interpreting that [state's] law." *Lupu*, 903 F.3d at 389 (quoting *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d. Cir. 2011)); (*see also* Tr. at 24:16–23). Particularly relevant in this context, decisions by other federal courts of appeals should be afforded "conclusive deference." *See Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 279 (2d

---

[6] Because the Court's analysis under the ORPS and Ohio common law are the same, the analysis set forth below pertains to Counts I and II of Plaintiff's Complaint. (*See* Tr. at 25:20–26:20 (conceding that there are no relevant distinctions between the analysis under Counts I and II of Plaintiff's Complaint)).

[7] While there are some Ohio Supreme Court decisions interpreting the ORPS, none involve identical or similar allegations concerning an online database's alleged promotion of personal profiles to gain paid subscribers.

9

Cir. 1981) (stating that a federal court exercising diversity jurisdiction should give "conclusive deference" to "a ruling by a court of appeals deciding the law of a state within its circuit"); *see also Hirschfield-Louik v. Cincinnati Ins. Co.*, No. 20-0816, 2022 WL 14004005, at *8 (W.D. Pa. Oct. 24, 2022). Indeed, when a federal circuit court makes a determination concerning the laws of a state within that circuit, "the federal courts of other circuits should defer to that holding, perhaps always, and at least in all situations except the rare instance when it can be said with conviction that the pertinent court of appeals has disregarded clear signals emanating from the state's highest court pointing toward a different rule." *Factors*, 652 F.2d at 282–83; *see also Ehrenfelt v. Janssen Pharm., Inc.*, 737 F. App'x 262, 265 (6th Cir. 2018); *Dawn Equip. Co. v. Micro-Trak Sys., Inc.*, 186 F.3d 981, 989, n.3 (7th Cir. 1999); *Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791, 796 (4th Cir. 1993); *Abex Corp. v. Maryland Cas. Co.*, 790 F.2d 119, 125–26 (D.C. Cir. 1986).

Thus, as set forth below, the Court yields conclusive deference to the Sixth Circuit's recent decision in *Hudson v. Datanyze, LLC*, No. 23-3998, 2025 WL 80806 (6th Cir. Jan. 13, 2025), which assesses virtually identical allegations under Ohio statutory and common law. *See LaFleur v. Yardi Sys., Inc.*, No. 24-1262, 2025 WL 460897, at *8 (N.D. Ohio Feb. 11, 2025) ("Thus, this Court predicts that *Hudson II*'s narrower interpretation of Ohio law more closely aligns with how the Supreme Court of Ohio would apply the commercial value requirement to these facts.").

### A.  Commercial Value

By definition, the ORPS requires that a claimant's persona—comprised of "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance"—has "commercial value." Ohio Rev. Code § 2741.01(A); *see Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293 (Ohio Ct. App. 2d 2020). *Harvey* explained that, under a longstanding interpretation of the statute, a "persona" having commercial value does not mean the person needs preexisting "celebrity status." *Id*. at 304 (citations omitted); *see also Roe*, 714 F. App'x at 568 ("While plaintiffs need not be

national celebrities to assert a right of publicity claim, they must at least 'demonstrate that there is value in associating an item of commerce with [their] identity.'"). But the persona must still have some "commercial value." *Harvey*, 154 N.E.3d at 306 & 308 (noting that the "primary focus is the value of a person's name, vis-à-vis his or her ability to market it for commercial purposes"). *Harvey* approvingly relied on a federal district court decision holding that "[c]ommercial value may be established by proof of (1) the distinctiveness of the identity and by (2) the degree of recognition of the person among those receiving the publicity." *Harvey*, 154 N.E.3d at 306 (quoting *Cheatham v. Paisano Publications, Inc.*, 891 F. Supp. 381, 386–87 (W.D. Ky. 1995)); *see also Hudson*, 2025 WL 80806, at *2. Thus, in order to succeed on a claim under the ORPS, a plaintiff "must have notoriety which is strong enough to have commercial value within an identifiable group." *Harvey*, 154 N.E.3d at 306 (quoting *Cheatham*, 891 F. Supp. at 386–87).

Defendant argues Plaintiff's claims fail because he does not allege that his name carries independent commercial value for the marketing of a product. (Mov. Br. at 8–10 & 14; Reply Br. at 6). Specifically, Defendant claims that "commercial value" under Ohio law is not measured by whether Plaintiff's preview profile or expanded profile imports value to D&B; rather, it is measured by whether "Plaintiff's reputation or prestige has commercial value to market a product." (Mov. Br. at 14). In addition, Defendant maintains Plaintiff fails to allege that D&B uses his name and business information to endorse the D&B Hoovers website or database, whether expressly or impliedly. (*See id.* at 9). Moreover, Defendant asserts that apart from Plaintiff's name itself, he has no property rights in other categories of information displayed on D&B's website, including publicly accessible information, such as his "contact information, job title[], place of work, and the identities of [his] colleagues." (*Id.* at 10–11).

11

Plaintiff disagrees that he must establish "pre-existing commercial value 'independent' of the [D]efendant's use." (Opp. Br. at 8). In particular, Plaintiff contends D&B uses his name to advertise subscriptions in a way that is not "incidental to the advertisement." (*Id.*). Thus, Plaintiff maintains D&B's mere use of his persona to solicit paid subscriptions establishes that it has commercial value under the ORPS. (*Id.* at 8–11).

In reply, Defendant asserts Plaintiff's argument is circular, i.e., that "because Hoovers includes his profile [in its database], he has pleaded commercial value." (Reply Br. at 6). Defendant contends this argument "confuses the value of Hoovers with the commercial value of Plaintiff's name, which must have its *own* value for influencing consumers or other behavior." (*Id.* at 6–7). Defendant stresses that "Plaintiff points to nothing of his own to support an independent, personal commercial value in his name." (*Id.* at 7).

On February 14, 2024, Defendant filed a supplemental submission regarding the Sixth Circuit's decision in *Hudson v. Datanyze, LLC*, No. 23-3998, 2025 WL 80806 (6th Cir. Jan. 13, 2025). (D.E. No. 114). In sum, Defendant argues that under *Hudson*, Plaintiff's "conclusory allegations about being listed as one of millions of persons in [the D&B] Hoovers [database] . . . is not enough to sustain a claim under [the ORPS] and the tort of misappropriation of name or likeness." (*Id.* at 3). In addition, Defendant urges the Court to dismiss the Complaint with prejudice because Plaintiff's discovery responses confirm that "he does not assign any specific commercial value to his personal information" and that "his information does not otherwise have commercial value independent of D&B's unauthorized use of it." (*Id.* (quoting Plaintiff's Response to Defendant's Interrogatory No. 5); *see also id.* (quoting Plaintiff's deposition testimony in which he concedes that "the commercial value of [his] persona is simply that [he is] in [the D&B] Hoovers [database]")).

12

On February 19, 2025, Plaintiff filed a response to Defendant's supplemental submission arguing that the Complaint in this matter is distinguishable from *Hudson* because "Defendant is selling a service for tracking Mr. Debose's web-browsing behavior and career events, not just a directory of contact information." (D.E. No. 115 at 1). Plaintiff claims his "allegations of commercial value do not rest merely on the inclusion of his name and contact information in the searchable D&B Hoovers directory." (*Id.*). Instead, Plaintiff refers to other aspects of D&B's website that allegedly reflect commercial value in his name such as "web-browsing behavior and career events" which he claims are "commercially valuable to the salespeople, recruiters, and marketers who pay for D&B Hoovers subscriptions because this information enables them to craft personalized sales and marketing communications specifically directed at [him]." (*Id.*). Overall, Plaintiff maintains that commercial value exists in this matter based on D&B's alleged "ability to track specific individuals like Plaintiff" which "lies at the heart of what makes a D&B Hoovers subscription." (*Id.*).

In *Hudson*, plaintiffs Charisma Hudson and Brian Schaefer alleged the same violations of the ORPS and Ohio common law against Datanyze, LLC ("Datanyze"), an online database with millions of profiles, some of which are available temporarily during a free trial. 2025 WL 80806, at *1. Datanyze utilizes a "credits" system that permits access to a single profile in exchange for a credit. *Id.* During a 90-day free trial period, Datanyze offers ten credits per month. *Id.* Following the trial period, a user must pay for a subscription to view additional profiles. *Id.* Similar to the instant case, the database maintained by Datanyze provides personal and business contact information from the millions of profiles on its website to users in sales, marketing, and recruiting. *Id.* The Datanyze website allegedly includes publicly accessible profiles of plaintiffs Hudson and Schaefer, which purportedly were accessed during a free trial. *Id.* Plaintiffs claimed

13

that their Datanyze profiles contained additional information that had not been on their LinkedIn profiles. *Id.*

The Sixth Circuit recently upheld the district court's dismissal of plaintiffs' complaint for failure to plead that their personas had independent commercial value. *Hudson*, 2025 WL 80806, at 3–4. **First**, the court dismissed plaintiffs' contention that they had intellectual property and privacy interests in their names because they did not plead any facts reflecting a purported distinctiveness of their identities. *Id.* at *3. In a similar vein, the court noted plaintiffs failed to allege how they "received more recognition than others receiving publicity." *Id.* Moreover, plaintiffs did not allege whether Datanyze's targeted customers, including "business recruiters, salespersons, and marketers" found plaintiffs' names and likenesses "particularly valuable or recognizable." *Id.* **Second**, the Sixth Circuit dismissed plaintiffs' allegation that Datanyze stripped them of the commercial value associated with their names as a mere "'unadorned, the-defendant-unlawfully-harmed-me accusation' that d[id] not suffice to plausibly state a claim for relief." *Id.* (quoting *Ashcroft*, 556 U.S. at 678 (citation omitted)). **Third**, the court rejected the notion that commercial value flows from Datanyze's alleged misappropriation of plaintiffs' names or likenesses to solicit paid subscriptions, emphasizing that "[n]either Ohio courts nor [the Sixth Circuit] when applying Ohio law, have endorsed this theory." *Id.* (analogizing the facts and holdings in *Roe* and *Harvey*, which involved failures to establish commercial value in plaintiffs' names and likenesses). **Fourth**, because plaintiffs did not allege "that Datanyze did anything more than treat [p]laintiffs' profiles like the millions of others in its database," the court found no plausible way to infer commercial value in plaintiffs' names or likenesses. *Id.* **Finally**, the Sixth Circuit refused to credit plaintiffs' assertion that their names and likenesses have commercial value by virtue of Datanyze's subscription sales to its database because the allegations did not reflect

14

that plaintiffs' "names and likenesses had commercial value before or after their [alleged] appropriation." *Id.*[8]

The Court finds that the instant matter is analogous to *Hudson*, and thus dismissal of the Complaint is warranted for the same reasons. Akin to *Hudson*, Plaintiff makes conclusory allegations regarding purported intellectual property and privacy interests in his name; he does not plead any facts showing his name carries any distinctiveness or independent value. (*See* Compl. ¶ 44; *see also id.* ¶¶ 22–23); *LaFleur*, 2025 WL 460897, at *11 ("Plaintiffs concede, an allegation of only 'intellectual property and privacy interests' is insufficient to state a claim under Ohio law; but so too is an additional allegation that fails to demonstrate a name's distinctive value outside the context of its use in the defendant's advertisement.").

In addition, the Complaint lacks allegations as to (i) whether Plaintiff received more recognition than other individuals who receive publicity and (ii) whether D&B's target customers recognized or found particular value in Plaintiff's name or persona beyond their general interest in D&B Hoovers database as a whole. (*See generally* Compl.). As in *Hudson*, the Complaint contains "unadorned, the defendant-unlawfully-harmed-me accusations" that D&B denied Plaintiff the commercial value of his persona. *See Ashcroft*, 556 U.S. at 678 (citation omitted); (*see also* Compl. ¶ 65).

---

[8] In upholding the dismissal of plaintiffs' complaint, the Sixth Circuit did not address four cases recited at length by the appellant and relied upon by Plaintiff in the matter before this Court: *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877 (N.D. Cal. 2022), *Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865 (W.D. Wash 2021), *vacated*, 38 F. 4th 824 (9th Cir. 2022), *Kolebuck-Utz v. Whitepages Inc.*, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021), and *Wilson v. Ancestry.com LLC*, 653 F. Supp. 3d 441, 454–59 (S.D. Ohio). *See Hudson v. Datanyze, LLC*, No. 23-3998, D.E. Nos. 14 & 21 (6th Cir. 2024); (*see generally* Opp. Br.). Although the Sixth Circuit is not bound by any of these decisions, this Court notes the instant matter is factually distinguishable from *Wilson*, the only case that originated in an Ohio district court. Indeed, *Wilson* found plausible allegations of commercial value where plaintiff alleged, among other things, that Ancestry.com used his persona to "send[] promotional emails and onsite messages to users who ha[d] not yet subscribed and who may [have] be[en] related to [plaintiff] or a proposed class member." 653 F. Supp. 3d at 448 & 455. Here, by contrast, Plaintiff does not allege that D&B used his persona in any targeted promotional emails or in any onsite pop-up messages. Rather, the alleged "advertisements" in the Complaint amount to a list of search results that, in turn, display preview and expanded profiles to free trial users.

Based on an independent review of the ORPS and Ohio common law claims adjudicated in the Sixth Circuit and the Court of Appeals of Ohio, this Court also rejects Plaintiff's contention that it may find commercial value based on D&B's alleged misappropriation of Plaintiff's name to solicit paid subscriptions to its database. (*See* Opp. Br. at 8–11); *see also LaFleur*, 2025 WL 460897, at *8 ("[T]his Court finds more persuasive *Hudson II*'s acknowledgment that a name's commercial value is a separate requirement independent from its commercial use."). For example, in *Roe*, a couple sued an author and various book distributors for use of their picture on a book cover without their permission. 714 F. App'x at 566. The Sixth Circuit upheld the grant of summary judgment in the book distributors' favor because the record lacked evidence to suggest that "there was any commercial value in associating [plaintiffs'] likeness" with those defendants. *Id.* at 569. Specifically, it found the association between plaintiffs' image and the book distributors merely incidental and thus insufficient to sustain a claim under the ORPS. *Id.*

In 2020, the Court of Appeals of Ohio acknowledged that there is "very little Ohio case authority regarding actions brought under [the ORPS]." *Harvey*, 154 N.E.3d at 304. In *Harvey*, the court upheld an order granting summary judgment in defendants' favor based on the "newsworthy exemption" under the ORPS. *Id.* at 295 & 309. Harvey brought an ORPS claim after defendants referenced her name three times in a 200-page online presentation for realtors' continuing education; specifically, defendants cited Harvey's name in connection with an Ohio fraud case involving Harvey's sale of her home. *Id.* at 298–99. Before finding the newsworthy exemption applicable, the court recognized Harvey's failure to present evidence indicative of commercial value in her name. *Id.* at 306. In fact, the court commented that Harvey repeatedly asserted the opposite—"that she was not a public figure or even a limited public figure, but merely 'sold a house to a private buyer in a private sale.'" *Id.* The court also found defendants' use of

Harvey's name incidental because it appeared merely three times in a 200-page presentation. *Id.* at 307.

Like *Roe*, Plaintiff pleads no facts to suggest that "there was any commercial value in associating [his] likeness" with D&B. *See* 714 F. App'x at 569. Relevant here, there are no allegations that distinguish D&B's alleged use of Plaintiff's name or likeness from its use of the other profiles in its database. (*See generally* Compl.). There simply are no allegations that D&B "curated and delivered, or otherwise highlighted Plaintiffs' profiles to potential customers" for commercial gain. *See Hudson*, 2025 WL 80806, at *3. Similar to *Harvey*, no plausible reading of the Complaint suggests that Plaintiff is a public figure of any sort. (*See generally* Compl.). Specifically, Plaintiff's job with the City of Columbus as a Housing Rehabilitation Technician, standing alone, does not suggest that his name or persona carries any commercial value as a public figure. (*See id.* ¶ 32); *see also Harvey*, 154 N.E.3d at 306. In addition, while Plaintiff maintains commercial value may also be inferred from D&B's purported tracking of his "web-browsing behavior and career events" (D.E. No. 115 at 2), he does not cite to, nor can this Court locate, similar allegations in the Complaint (*see generally* Compl.).[9] For these reasons, Plaintiff has not adequately pled commercial value in his name or persona based on D&B's purported use of the same to solicit paid subscriptions. *See LaFleur*, 2025 WL 460897, at *9 (noting that "*Hudson II* applied *Zacchini*, *Harvey*, and *Roe* to interpret Ohio's commercial value requirement and reject [p]laintiffs' same argument [ ], 'that [Yardi's] misappropriation of their names or likenesses to solicit paid subscriptions, in and of itself, demonstrates commercial value'" (quoting *Hudson*, 2025 WL 80806, at *3)).

---

[9] Even if Plaintiff had alleged such behavior, the argument remains circular—that is, the alleged commercial value in Plaintiff's name would be based solely on D&B's use of it. *See LaFleur*, 2025 WL 460897, at *8 ("[T]his Court finds more persuasive *Hudson II*'s acknowledgment that a name's commercial value is a separate requirement independent from its commercial use.").

Finally, Plaintiff maintains his name carries commercial value because it has been exploited by **both** D&B and D&B's competitors. (*See* Opp. Br. at 11; ("If Plaintiff's persona did not have commercial value, [D&B] and its competitors would not have misappropriated it to advertise."); *see also* Compl. ¶ 14). However, Plaintiff does not allege that his name had independent commercial value in any other context before or after its alleged misappropriation in the D&B Hoovers database or by any other similar database. *See Hudson*, 2025 WL 80806, at *3. The Court agrees with Defendant that Plaintiff's argument is circular. Indeed, Plaintiff essentially argues that he pled commercial value in his name and persona because D&B displays his information in preview and expanded profiles. In addition, the Complaint is bereft of allegations that indicate whether D&B's competitors use or value Plaintiff's name in a different manner than D&B. Thus, without any additional factual allegations regarding the commercial value of Plaintiff's name or likeness with respect to D&B's competitors, the Court finds the allegations fall short of establishing commercial value.

For the reasons set forth above, Plaintiff failed to plead commercial value in his name or likeness as is required to state a claim under the ORPS and Ohio common law. Accordingly, Defendant's motion to dismiss is **GRANTED**.[10]

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss the Complaint. Plaintiff's Complaint is **DISMISSED** *with prejudice*.[11] An appropriate Order

---

[10] Because the Court dismisses Plaintiff's Complaint for failure to plead commercial value under the ORPS and Ohio common law, the Court need not resolve the parties' remaining disputes, including those that raise constitutional concerns. *See Lyng v. Nw. Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 445 (1988) (noting "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them").

[11] Finally, in its supplemental submission dated February 14, 2025, Defendant argues that dismissal with prejudice is warranted and cites Plaintiff's discovery responses and deposition testimony which confirms that "he does not assign any specific commercial value to his personal information" such that "he does not otherwise have commercial value independent of D&B's unauthorized use of it." (D.E. No. 114 at 3 (collecting cases)). Because

accompanies this Opinion.

Dated: March 7, 2025                                                                s/ *Esther Salas*
                                                                                    **Esther Salas, U.S.D.J.**

---

Plaintiff did not address or oppose Defendant's request for dismissal with prejudice in its responsive submission (*see* D.E. No. 115), the Court finds that an amendment in this matter would be futile. *See, e.g.*, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (noting that a court need not provide leave to amend where such amendment would be "futile").